THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER E. RANGEL, Defendant-Appellant.

First District (5th Division)    No. 80-2095

Opinion filed February 19, 1982.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago (Sandra L. Thiel and Bruce Mosbacher, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and Thomas G. DiCianni, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant Roger Rangel was charged with burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) and convicted of attempt burglary (see Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a)) after trial by jury. The trial court imposed a sentence of two years imprisonment with credit for the time which defendant spent in jail and in the custody of the Department of Mental Health (DMH) pending trial.

Defendant's appeal presents two issues:

First, whether there was a *bona fide* doubt about his fitness to stand trial because he had been adjudicated unfit two years before he was placed on trial *and* there was no subsequent fitness hearing.

Second, whether it was improper to instruct the jury on the offense of attempt burglary when all the evidence proved that he entered the complainants' house without authority, and the only dispute was whether he acted innocently or with the criminal intent which is a prerequisite of burglary.

Pertinent to this appeal is the following evidence:

Delores Beskoon was playing cards with her daughter in the front room of their house around midnight on July 20, 1976, when, responding to the barking of the family dog, Mrs. Beskoon found defendant crouching in the corner of her daughter's bedroom. Screaming, she ran out of the house with her daughter. Her husband Donald woke up and saw defendant walk out of the bedroom and out of the house. No property was taken or disturbed, and there was no damage to the house nor any sign of forced entry. The police officer who arrested defendant several blocks away confirmed that defendant had been drinking.

Defendant was indicted for burglary, and his attorney filed a petition alleging that defendant was not fit to stand trial.

Responding to a court order, Dr. Frank Lorimer, a staff psychiatrist at the Psychiatric Institute of the Circuit Court of Cook County, filed a report which concluded that defendant could not "adequately" cooperate with his attorney "because of his impulsive and threatening suicidal behavior." Hospitalization was recommended because of the danger that defendant would harm himself or others.

On March 8, 1977, following a hearing at which the only evidence was presented by stipulation, the court found defendant unfit to stand trial, and he was committed to the custody of the Department of Mental Health. On November 8, 1977, after treatment at the Chester Mental Health facility, defendant was discharged by DMH as no longer in need of mental treatment.

Pursuant to the trial court's order, defendant was again examined by the Psychiatric Institute of the Circuit Court, and Dr. Lorimer filed a report in which he concluded that defendant had become fit to stand trial. The prosecution then petitioned for a fitness hearing, but the record does not indicate that a hearing was had or a ruling made on this request.

Eventually, this case was assigned to the calendar of another trial judge, and trial by jury commenced on April 9, 1979—two years after defendant was adjudicated unfit to stand trial. The record does not show that the new trial judge was informed of the prior adjudication of unfitness, or that the judge either observed or was notified of anything that would have raised a bona fide doubt about defendant's fitness.

At trial, defendant testified that he was a chronic alcoholic and, because of a drunken stupor, he mistakenly entered the Beskoon house believing that he was entering his own house and going into his own bedroom. He further testified that when he heard screams and realized his mistake, he mumbled an apology and walked out.

Over objection, the court gave instructions for both burglary and attempt burglary. The jury returned a verdict of guilty of attempt bur-

glary, and wrote on the verdict form: "We recommend leniency and enrollment in a program for alcoholism rehabilitation."

Defendant's post-trial motions preserved the issue of whether it was proper to give an attempt instruction. However, there was no question raised about his fitness to stand trial.

Initially, defendant contends that his conviction must be reversed on the grounds that there is a *bona fide* doubt about whether he was fit to stand trial. This argument is premised solely on the notion that after an adjudication of unfitness, it must be presumed that this disability continues until there has been a subsequent adjudication of fitness.*

We agree that it would violate the fundamental constitutional guarantee of due process of law to convict a defendant who is mentally unfit to stand trial. (*People v. Murphy* (1978), 72 Ill. 2d 421, 430, 381 N.E.2d 677.) Thus, a fitness hearing is required whenever the trial court becomes aware, either before or during trial, of facts which raise a *bona fide* doubt about a defendant's fitness to stand trial. (*People v. Murphy*; Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1(c) (now at ch. 38, par. 104—11(a), Ill. Ann. Stat., ch. 38, par. 104—11(a) (Smith Hurd 1980)).) The standard used for determining fitness is whether a defendant is both: (1) able to understand the nature and purpose of the proceedings against him, and (2) able to assist in his defense. *People v. McKinstray* (1964), 30 Ill. 2d 611, 615, 198 N.E.2d 829; Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1(a) (now at ch. 38, par. 104—10, Ill. Ann. Stat., ch. 38, par. 104—10 (Smith Hurd 1980)).

The crucial question in disposing of the first issue in this case is whether there is a *bona fide* doubt concerning defendant's fitness when he was placed on trial. Defendant argues that there is a *bona fide* doubt because (a) he was adjudicated unfit two years before being placed on trial, and (b) there has been no subsequent adjudication of fitness.

Although he relies upon several appellate court cases (*People v. Davis* (1975), 25 Ill. App. 3d 1007, 324 N.E.2d 58; *People v. Williams* (1980), 92 Ill. App. 3d 608, 415 N.E.2d 1192; *People v. Greene* (1981), 102 Ill. App. 3d 639), we find that our decision is controlled by the supreme court's decision in *People v. Barkan* (1970), 45 Ill. 2d 261, 259 N.E.2d 1.

The defendant in that case had been adjudicated mentally ill several years before he entered a plea of guilty in a criminal case. Since he had never been adjudicated as restored to sanity, it was argued that this fact alone was sufficient to require an after-the-fact finding that there was a *bona fide* doubt about his fitness to stand trial.

The key contention in *Barkan*, as in the present case, was that there is

---

* Effective December 28, 1979, a hearing is mandatory, "unless waived by the defense," on the issue of whether an unfit defendant has regained his capacity to stand trial. Ill. Ann. Stat., ch. 38, par. 104—20(a) (Smith-Hurd 1980).

Defendant was sentenced before this new provision became effective, and the defense does not argue that it is applicable to this case.

a presumption of incompetency which was created by the prior adjudication, and that this presumption could only be rebutted by a subsequent adjudication of restoration. But the supreme court explained,

> "[W]e have many times recognized that the presumption of incompetency on which defendant relies is dependent upon two conditions: the illness must be shown to be of a permanent and continuing type, and the adjudication of illness must not have been too remote. (*People v. Brown*, 31 Ill. 2d 415, 420-21 * * *.) 'We have held, therefore, that commitment to a mental institution some years prior to trial may not of itself raise a *bona fide* doubt to overcome the presumption of sanity even though there has never been a restoration order.' " 45 Ill. 2d 261, 264.

Here, defendant was adjudicated unfit after the trial court received stipulated evidence which apparently included a report by the court appointed psychiatrist, Dr. Lorimer. According to this report, defendant was unable to co-operate with his attorney because of suicidal and violent behavior. However, no clinical diagnosis was made, and the report does not rule out the reasonable possibility that defendant merely suffered from the temporary depression which can be expected in most people who are charged with a crime for which they could receive a sentence of seven years imprisonment.

Nothing in the report or the record indicates that defendant's inability to cooperate with his attorney was caused by a continuing or permanent condition which, despite in-patient psychiatric treatment, would have continued to render him unfit when he went to trial two years later.

Defendant lucidly and persuasively testified on his own behalf, and the record shows that his attorneys were able to present a vigorous defense with his full cooperation. Even though most attorneys would not qualify as experts in evaluating a defendant's ability to understand the nature and purpose of the proceedings against him, we believe that defendant's attorneys would have been the first to know if he had been unable to assist in his defense. Since we must presume that defendant's trial attorneys fulfilled their solemn obligation to zealously defend their client, we must also presume that they would have informed the trial court if they believed that there were any *bona fide* doubts about his fitness to stand trial.

■■ Considering the remoteness of the adjudication of unfitness, the lack of any indication that defendant's unfitness was caused by a continuing or permanent condition, and the presumption that his trial attorneys would have informed the court of any *bona fide* doubts about their client's fitness, we find that there is no *bona fide* doubt that defendant was fit to stand trial.

The second issue is whether it was proper to give an attempt burglary instruction in a burglary prosecution where all the evidence on both sides showed that defendant entered the complainants' house without authority, and where the defense was that he did not have the criminal intent which is an element of the offense of burglary.

Defendant argues that this was an all-or-nothing case in which he was, if guilty at all, guilty of burglary. In other words, if defendant entered the Beskoon house with intent to commit attempt burglary, then it necessarily follows that he had the criminal intent which is a prerequisite of burglary. See Ill. Rev. Stat. 1977, ch. 38, pars. 8—4(a) and 19—1(a).

In response to this contention, the State points out that "attempt" is an "included offense" of the crime which was allegedly attempted (Ill. Rev. Stat. 1977, ch. 38, par. 2—9(b)) and argues that evidence of burglary justified instructing the jury on the lesser included offense of attempt burglary.

■■ We disagree with the State's contention. The supreme court has held that "if the evidence in a criminal case admits of but one conclusion, which is that the accused, if guilty at all, is guilty of the crime charged, it is error to give an instruction authorizing a conviction for a lesser offense [citations] * * *." (*People v. Preston* (1930), 341 Ill. 407, 420, 173 N.E. 383.) In such a case, it is error to instruct the jury that they can return a verdict of guilty of the included offense of attempt. *People v. Moore* (1916), 276 Ill. 392, 396, 114 N.E. 906.

A defendant has a right to keep the jury from receiving instructions on lesser included offenses where, for example, the defense is alibi or mistaken identity. (*People v. Taylor* (1967), 36 Ill. 2d 483, 489, 224 N.E.2d 266.) In such an all-or-nothing case, an instruction on an included offense would prejudice the defendant by inducing jurors to compromise possible doubts by returning a verdict of guilty of the lesser offense. (*People v. Keagle* (1967), 37 Ill. 2d 96, 102, 224 N.E.2d 834.) "[T]o give both instructions 'is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.' " *People v. Taylor* (1967), 36 Ill. 2d 483, 490-91.

In the present case, all the evidence on both sides proved that defendant entered the Beskoon house without authority. His defense was that he did not have the criminal intent which is an element of burglary: he testified that he was in a drunken stupor and that he mistakenly and innocently thought he was entering his own house. There was no evidence that any property in the house was taken or disturbed. Nor was there any evidence of forcible entry or any other kind of damage to the premises. Donald Beskoon confirmed that instead of running away, defendant simply walked out of the house. Plus, the arresting officer confirmed that defendant had been drinking.

■■ Under the facts of this case, if defendant had the criminal intent which is a prerequisite of attempt burglary, then he necessarily had the criminal intent which is an element of burglary. Therefore, in this all-or-nothing case, it was improper to give an instruction on a lesser included offense. Authorizing the jury to return a verdict on the included offense of attempt burglary prejudiced defendant because of the substantial potential for inducing jurors to resolve doubts on the issue of intent by compromising and returning a verdict of guilty on the less serious offense.

The plea for leniency which the jury included on the verdict form reinforces our conclusion that the presence of the improper instruction induced the jurors to compromise doubts about defendant's state of mind. Consequently, defendant's conviction for attempt burglary must be reversed. And, because a conviction on a lesser included offense bars reprosecution for the greater offense (*People v. Gray* (1977), 69 Ill. 2d 44, 51, 370 N.E.2d 797, *cert. denied* 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887), we must reverse without remand.

Reversed.

SULLIVAN, P. J., and MEJDA, J., concur.