THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE FALKNER, Defendant-Appellant.

Second District   No. 84—246

Opinion filed February 27, 1985.—Rehearing denied April 8, 1985.

G. Joseph Weller and Robert Hirschhorn, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and William F. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Following a jury trial in the circuit court of Kane County on three counts of murder, defendant was convicted of the lesser offense of voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2) and was sentenced to a 10-year term of imprisonment in the Department of Corrections. On appeal, defendant claims that the trial court erred in: (1) instructing the jury, over defendant's objection, as to the lesser included offense of voluntary manslaughter where defendant had predicated his defense on the jury's receiving no such compromise verdict; and (2) admitting evidence of the deceased's surviving family and prior medical history and evidence of the defendant's prior crimes or bad acts. We reverse.

On November 2, 1983, the deceased, 61-year-old Veo McGhee, went with his cousin, Larry McGhee, to their aunt's (Lottie McGhee) house to discuss some bills which had not been paid to Lottie. Lottie ran a boarding house and rented out rooms to various individuals, including defendant. According to Larry McGhee, Veo had been taking care of Lottie's bills. He became upset that her bills were not being paid and went to Lottie's to talk with defendant about his failure to pay them. There was evidence that the deceased was intoxicated at the time he and his cousin went to Lottie's.

When they arrived at Lottie's, Larry waited while Veo went inside to talk with his aunt. Approximately 10 minutes later, defendant and another man, Micky Boyd, entered the house; several other men also came shortly thereafter. Veo "put them out" because they entered the house without knocking. Defendant was outside with Veo at that time, and the two men began arguing, although Larry McGhee could not hear exactly what was said. According to Larry, Veo was yelling. The two men then went back inside the house and Larry remained outside.

Ten to 15 minutes later, Larry became concerned and went inside to check up on Veo. After talking with Lottie for a few minutes, Larry heard Veo and defendant arguing again upstairs, although he could not understand what was being said. Larry then heard a scuffle upstairs which lasted about two minutes. When the scuffle ended, Larry went upstairs and saw defendant coming down the stairs, holding a bloody knife in his right hand; defendant's sleeve and hand were also bloody. Defendant stated, "Veo shouldn't have been *** with me." He then continued downstairs with the knife.

Larry found Veo upstairs sliding down a hallway wall almost to the floor. Veo had blood on his face and shirt. Boyd was standing over Veo across the hallway and called to Larry to get an ambulance.

Paramedics were called to the scene but were unable to revive Veo, who died of stab wounds to his neck and left lower rib area. A search by police of the scene and of Veo's clothing at the hospital revealed no weapon on or about Veo's person. However, Officer Michael Perez did discover a bloody knife just north of Lottie's house.

Several hours later, defendant was seen by police walking westbound towards the police station and Lottie's house. He was placed under arrest and transported to the station, where he was processed. According to one of the arresting officers, defendant was "very intoxicated" at the time and could not even stand up.

The following morning, defendant was interrogated at the police station. After the *Miranda* rights were read to him, defendant gave a statement to police in which he admitted stabbing Veo McGhee. According to defendant, Veo came up to him and yelled that he (Veo) was taking over the house and that he wanted defendant out. Defendant stated that he would leave but could not take all his belongings with him at that time. Defendant then left the room, putting his knife in the waistband of his pants as he left. Defendant stated that when he reached the stairs, Veo again yelled to him, saying something to the effect, "Nigger, I'll kill you." At that point, defendant said that Veo placed his right hand into his right front pants pocket. Defendant thought Veo may have had a gun, so defendant took his knife and stabbed Veo. When asked how many times defendant had stabbed Veo, defendant stated "once," although he "may have" stabbed him more than once, but "couldn't remember."

According to the statement, defendant then ran out of the house and down the street, throwing the knife away as he left. The knife was discovered where defendant said he had thrown it. Defendant went to his cousin's house, where he continued to drink. Later he decided to turn himself in and was picked up on the way to the police station. Defendant also stated that Veo had threatened him in the past and that there were "indications" of a gun, although defendant had never seen Veo with a gun or carrying a gun. However, defendant said that Veo had told him in the past that he had a gun. Defendant identified the recovered knife as his own.

Cora Reid, Lottie's sister and Veo's aunt, testified that on several occasions when she would call Lottie, the phone was grabbed from Lottie's hand and defendant got on and stated that if Veo came over, he would kill him. This happened approximately two days before Veo was killed. Lottie testified that she did not remember defendant ever taking the phone from her and threatening to kill Veo. However, Lottie was described by one State's witness as being "senile."

After hearing the evidence and arguments of counsel, the jury was instructed as to self-defense, murder and, over defendant's objection, the lesser included offense of voluntary manslaughter. A guilty verdict was returned on the latter offense. Sentence was imposed and a timely appeal followed.

■ Defendant's first contention is that the trial court erred in instructing the jury, over his objection, as to the lesser included offense of voluntary manslaughter where the defendant predicated his defense on the jury's receiving no such compromise verdict. Defendant's argument is, essentially, that he has the absolute "right" to determine whether the lesser offense of voluntary manslaughter should go to the jury, and that the trial court errs when it instructs the jury as to a lesser offense in the absence of a defendant's consent or request. Defendant further argues that he had no notice that the State would seek a voluntary manslaughter instruction, and that his assumption that this theory would not be presented to the jury caused him to forego an intoxication defense, which he claims would have been effective against both the murder and voluntary manslaughter charges. The State, on the other hand, argues that it is entitled to an instruction on voluntary manslaughter (based on unreasonable belief) whenever the jury is also instructed on the theory of self-defense. We agree.

It is well settled in murder cases that if there is evidence which, if believed by the jury, would reduce the crime to manslaughter, an instruction defining manslaughter should be given. (*People v. Lockett* (1980), 82 Ill. 2d 546, 550, 413 N.E.2d 378.) Further, as a lesser included offense of murder, the offense of voluntary manslaughter need not be specifically alleged in the indictment, since an indictment for murder is deemed sufficient to apprise the defendant of all lesser included offenses. (*People v. Simmons* (1982), 93 Ill. 2d 94, 100, 442 N.E.2d 891; *People v. Krogul* (1983), 115 Ill. App. 3d 734, 735-36, 450 N.E.2d 20.) It is also well settled, however, that " 'if the evidence in a criminal case admits of but one conclusion, which is that the accused, if guilty at all, is guilty of the crime charged, it is error to give an instruction authorizing a conviction for a lesser offense [citations] ***.' " (*People v. Rangel* (1982), 104 Ill. App. 3d 695, 700, 432 N.E.2d 1141, quoting *People v. Preston* (1930), 341 Ill. 407, 420, 173 N.E. 383.) Thus, a defendant has a right to keep the jury from receiving instructions on lesser included offenses where, for example, the defense is alibi or mistaken identity. (*People v. Rangel* (1982), 104 Ill. App. 3d 695, 700, 432 N.E.2d 1141.) Similarly, in a homicide case, an instruction should not be given on the lesser included offense of vol-

untary manslaughter if the evidence clearly demonstrates that the crime was only murder and there is no evidence upon which a jury might find the defendant guilty of manslaughter. *People v. Lockett* (1980), 82 Ill. 2d 546, 551, 413 N.E.2d 378.

In *People v. Lockett* (1980), 82 Ill. 2d 546, 551, 413 N.E.2d 378, our supreme court held that if the evidence supports a self-defense instruction, it will also support a voluntary manslaughter instruction. A claim of self-defense exists where there is evidence that the accused reasonably believed his use of force was necessary in order to prevent imminent death or great bodily harm to himself (Ill. Rev. Stat. 1983, ch. 38, par. 7—1.) Thus, when the jury is given the self-defense instruction (see Illinois Pattern Jury Instructions (IPI), Criminal, No. 24—25.06 (2d ed. 1981)), it may conclude one of three things. First, it could conclude that the defendant did not have a subjective belief that use of force was necessary. In that case, the verdict should be murder. (*People v. Lockett* (1980), 82 Ill. 2d 546, 551, 413 N.E.2d 378.) Second, it could determine that defendant had the subjective belief that use of force was necessary and that subjective belief was reasonable. In this case, defendant would be exonerated. Third, it could conclude that the defendant subjectively believed that use of force was necessary, but that this subjective belief was unreasonable under the circumstances. In this event, the jury should return a verdict of voluntary manslaughter (82 Ill. 2d 546, 552, 413 N.E.2d 378.) The only difference between a finding of self-defense and voluntary manslaughter lies in the reasonableness or unreasonableness of defendant's subjective belief. Thus, the *Lockett* court concluded that a self-defense and a voluntary manslaughter instruction should be given when any evidence is presented showing that defendant had a subjective belief that use of force was necessary. (82 Ill. 2d 546, 552, 413 N.E.2d 378.) Further, the court held that it is the judge's duty to determine if there was any evidence presented that the defendant had a subjective belief. (82 Ill. 2d 546, 553, 413 N.E.2d 378.) If the judge determines that such evidence was presented, the jury must then determine if the belief in fact existed, and, if so, whether that belief was reasonable or unreasonable. 82 Ill. 2d 546, 553, 413 N.E.2d 378.

Defendant argues that the foregoing rules apply only if he requests that the voluntary manslaughter instruction accompany the self-defense instruction, and not when such a request is made by the State. No authority is cited for this proposition. While our review of the relevant case law indicates that it is indeed the defendant who typically requests a voluntary manslaughter instruction (see, *e.g., People v. O'Neal* (1984), 104 Ill. 2d 399, 472 N.E.2d 441; *People v.*

*Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378; *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Manley* (1982), 104 Ill. App. 3d 478, 432 N.E.2d 1103; *People v. Glass* (1981), 94 Ill. App. 3d 69, 418 N.E.2d 454), the rationale for requiring such an instruction whenever a self-defense instruction is also given is not that a defendant should have ultimate control over his case. Rather, we believe the rationale for requiring both instructions is that the jury should be fully and accurately instructed as to *all* the issues it is called upon to decide once the defendant has raised the issue of self-defense. Further, we believe that both parties have a right to request and receive a voluntary manslaughter instruction whenever a self-defense instruction is given.

This view finds support in several cases discussing a defendant's alleged "right" to have the jury pass only upon his guilt or innocence of murder. In *People v. Taylor* (1967), 36 Ill. 2d 483, 488-89, 224 N.E.2d 266, the court stated, in *dicta*:

> "To speak of the 'right' of a defendant to require the jury to pass only upon his guilt or innocence of murder is misleading. If a jury trial is waived, the judge determines from the evidence whether the defendant is guilty of murder or of some lesser included offense, and the defendant has no 'right' to restrict the judge's determination to the question of his guilt or innocence of murder. (See, *e.g. People v. Green*, 23 Ill. 2d 584.) And if the evidence would support a verdict of manslaughter, a defendant will not be heard to complain that a manslaughter instruction was given, even though he did not request it. * * *.
>
> * * * So it has been said, 'The general statement contained in the cases, that a manslaughter instruction should be given where there is evidence justifying it, must be understood in the sense the *duty exists when such instruction is offered by either side*, when the circumstances justify it, * * *.' [Citation.]" (Emphasis added.)

The court concluded:

> "When the evidence will support either charge *and the prosecution does not tender an instruction on the lesser offense*, the defendant has a choice, subject to the judge's authority to instruct *sue sponte* [*sic*], of submitting one or both instructions." (Emphasis added.) (36 Ill. 2d 483, 490, 224 N.E.2d 266.)

See also *People v. Pierce* (1972), 52 Ill. 2d 7, 11, 284 N.E.2d 279, finding no error in the trial court's instructing the jury on voluntary manslaughter over defendant's objection.

■ Pursuant to these authorities, it is evident that the trial court

in the instant case did not err in instructing the jury, over defendant's objection, as to the lesser included offense of voluntary manslaughter. The parties do not dispute, and our review of the record indicates, that there was evidence which would support a finding that defendant had a subjective belief that the use of force was necessary. Defendant's statement to the police indicated that he stabbed the deceased only after he saw Veo reach into his pants pocket for what he believed was a gun. Veo was intoxicated and angry at the time of the incident, and defendant's statement indicated not only that Veo had made prior threats to defendant, but also that there were "indications" that Veo possessed a gun. On the basis of this record, the trial court correctly concluded that there was some evidence that defendant had a subjective belief that the use of force was necessary. Accordingly, the court was required, upon defendant's request, to submit the instruction on self-defense. (*Cf. People v. Barnard* (1984), 104 Ill. 2d 218, 231-32, 470 N.E.2d 1005 (where defendant did not request or desire a self-defense instruction).) This being the case, the question of the reasonableness of defendant's belief was properly before the jury, which could either have concluded that the belief, if it in fact existed, was reasonable, and therefore that defendant's actions were in self-defense, or that they were unreasonable, and therefore that the offense was voluntary manslaughter. (*People v. Lockett* (1980), 82 Ill. 2d 546, 553, 413 N.E.2d 378.) Under these circumstances, as stated in *Taylor*, the court has a duty to instruct the jury as to the lesser offense " 'when such instruction is offered by either side ***.' " *People v. Taylor* (1967), 36 Ill. 2d 483, 489, 224 N.E.2d 266.

Defendant's next contention is that the trial court erred when it permitted the State to introduce, over defendant's objection, evidence that the deceased lived with and cared for his 80-year-old uncle, that the deceased was in generally poor physical condition, and that the deceased was angry with the defendant over some allegedly unpaid bills.

■ With respect to evidence that Veo McGhee lived with and cared for his Uncle James, Lottie's brother, the State concedes that this evidence was not particularly probative of the issues at trial. It, nevertheless, argues that its admission does not warrant reversal, citing the case of *People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626, as support. We agree. In determining whether reversal is required, various factors should be considered, such as: (1) the sufficiency of the evidence against the defendant; (2) the severity of the sentence imposed; (3) whether the evidence was presented in such a manner as to cause the jury to believe it to be material; and, (4)

whether the evidence was presented in an effort to relate it to the defendant's punishment. (51 Ill. 2d 302, 306-08, 281 N.E.2d 626.) The court should also consider the desirability of affirming the conviction of an obviously guilty defendant and weigh this factor against the danger of deteriorating our procedural safeguards by ignoring their breach. 51 Ill. 2d 302, 308, 281 N.E.2d 626.

■ After reviewing these factors as they apply to the instant case, we conclude that the introduction of evidence that the deceased lived with and cared for his aged uncle was not reversible error. Notably, the defendant has not challenged the sufficiency of the evidence against him. In fact, there is ample evidence in the record to support defendant's conviction for voluntary manslaughter. The sentence imposed here was only 10 years, well within the authorized range of penalties for voluntary manslaughter, a Class 1 felony. (See Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(c), 1005—8—1(4).) Further, the evidence was introduced through a series of only two questions posed by the State and was only momentarily referred to during closing argument to tie the deceased in with Lottie's finances. Thus, it cannot be said that the evidence was presented in such a manner as to cause the jury to believe it to be material, or that it was presented in an effort to relate it to defendant's punishment. Accordingly, on the basis of the factors outlined in the *Wilson* decision, the introduction of this evidence was not reversible error.

■ Similarly, we find no error in the admission of certain testimony to the effect that the deceased thought defendant was not paying his bills. Defendant characterizes this testimony as "prior crimes" or "bad acts" of the defendant which unduly prejudiced the outcome of the case. The challenged testimony was offered for the sole purpose of showing the state of mind of the victim when he went over to Lottie's house on the day in question. The State argued that it was relevant on the question whether the victim went to the house in an aggressive manner to throw the defendant out or merely to talk with the defendant about his concern over unpaid bills. The court instructed the jury that the evidence should be considered only for this limited purpose. Further, evidence of a debtor-creditor relationship, even assuming the jury considered it as such, is not evidence of a crime, absent an indication of a criminal intent. Finally, both the prosecutor and defense counsel commented during closing argument that this evidence was only introduced to show the victim's state of mind. Under these circumstances, we conclude that the introduction of this evidence was not error.

■ Finally, defendant challenges the admission of evidence re-

garding the decedent's past medical history. This evidence was introduced through the testimony of the autopsy physician, who referred to a medical history prepared and compiled by another physician, who did not testify at trial. Defendant contends that this evidence was not responsive or relevant to the defendant's theory of self-defense, *i.e.*, that the decedent had a gun, and that the autopsy physician was not the "treating physician," and thus the evidence was inadmissible hearsay.

Initially, it is clear that the challenged testimony was intended to have a bearing upon the reasonableness of the defendant's belief that the use of force was necessary. Although defendant's theory of the case was not that there was a physical altercation, but that the decedent had a gun, some evidence was introduced that there was a struggle, that the deceased was angry, intoxicated, and had made prior threats to the defendant. Given the fact that the State, at the time the evidence was introduced, did not know whether the defendant would also rely upon the evidence of a struggle, we believe the challenged testimony was relevant to the issue of the reasonableness of defendant's belief.

However, we agree with the defendant, and the State apparently concedes, that this evidence was inadmissible hearsay not falling within the "treating physicians" exception to the hearsay rule. (See *Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 1097, 410 N.E.2d 266; *Messina v. Zody* (1973), 13 Ill. App. 3d 566, 570, 300 N.E.2d 851; *cf. People v. Gant* (1974), 58 Ill. 2d 178, 185-86, 317 N.E.2d 564.) Although the State claims that the hearsay objection was waived, we do not agree with this contention. During argument on the challenged testimony, defense counsel stated: "Certainly I have one basis, and that being the fact that we're not talking about treating physician, but relying on the records." We believe this statement was sufficient to constitute an objection on the ground of hearsay and thus was not waived by defendant. The hearsay objection was also specifically alleged in defendant's post-trial motion for a new trial.

■ It is generally held that where there is no reasonable possibility that a jury would have acquitted the defendant if the hearsay evidence had been excluded, admission of the evidence is harmless error. (*People v. Griggs* (1982), 104 Ill. App. 3d 527, 531, 432 N.E.2d 1176; *People v. Hall* (1980), 90 Ill. App. 3d 1073, 1077, 414 N.E.2d 201, *cert. denied* (1981), 454 U.S. 893, 70 L. Ed. 2d 207, 102 S. Ct. 388.) In the instant case the only other evidence bearing upon the reasonableness of defendant's belief was the fact that there were prior "indications" of a gun, that the decedent had made prior threats to the

defendant, that there was a struggle, that the decedent was intoxicated and angry at the time of the incident, that the decedent reached into his pocket while saying, "Nigger, I'll kill you," that no gun was ever discovered, and that the defendant stabbed the decedent twice but could not remember the second time. We note that the challenged testimony spanned seven pages of trial transcript and was referred to in the prosecutor's closing argument to negate any theory that the decedent was a physical threat to the defendant. Under these circumstances, we cannot determine the extent to which the jury considered the decedent's allegedly "enfeebled" condition in passing upon the reasonableness of defendant's belief that the use of force was necessary. We therefore conclude that the introduction of this testimony was not harmless error, and that the cause must be remanded for a new trial. See *People v. Donaldson* (1956), 8 Ill. 2d 510, 514, 134 N.E.2d 776; *People v. Oden* (1960), 20 Ill. 2d 470, 485, 170 N.E.2d 582.

Accordingly, the judgment of the circuit court of Kane County is reversed and remanded for further proceedings.

Reversed and remanded.

NASH, P.J., and STROUSE, J., concur.