THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRY JOE CREAMER, Defendant-Appellant.
Fourth District   No. 4—85—0671

Opinion filed April 29, 1986.

Daniel D. Yuhas and Judith N. Kirby, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

A Vermilion County jury convicted the defendant of one count of aggravated criminal sexual assault (Ill. Rev. Stat., 1984 Supp., ch. 38,

par. 12—14(b)(1)), and the court sentenced him to six years in the Department of Corrections. We reverse the conviction and remand for a new trial.

The victim, 11 years old at the time of the incidents which led to charges against the defendant, testified at trial. She related that during her "last" visit to her grandmother's house, her uncle, the defendant, had touched her vaginal region with his hand. However, the victim indicated that the defendant did not put his finger inside her vagina on this occasion. The victim then stated that similar incidents with her uncle had occurred earlier, also in her grandmother's bedroom. The victim described pulling down her pants on the earlier occasions and then could not, or would not, answer the prosecutor's nonleading inquiry into the events immediately following. The court indicated that the prosecutor was free to lead the witness as he felt it appropriate. The following colloquy then ensued:

"[State's Attorney]: [Victim], talking about the time before last, okay, you were in the bedroom with Terry, right?

A. Yeah.

Q. After he got on the bed, did Terry touch you?

A. Yeah.

Q. Where did he touch you?

A. My pee-pee.

Q. Okay. What did he touch you with?

A. His hand.

Q. Okay. And how did he touch you? Huh?

A. With his hand.

Q. Okay. Now, did—okay. Now, we talked about two times now. Do you remember any other times this happened?

A. No.

Q. Okay. Now, either time then did Terry actually put his finger inside you?

[Defense counsel]: Objection, Your Honor.

WITNESS: Yeah.

THE COURT: The objection is overruled. I didn't hear the answer.

[State's Attorney]: What was the answer, [victim]?

A. Yes.

Q. Do you remember which time or—

A. No."

On cross-examination, defense counsel inquired of the witness further concerning these events. The victim's testimony proceeded as follows:

"Q. Okay. Did he touch you?

A. Uh-huh.

Q. Okay. But he didn't put his finger inside; is that right?

A. Yeah.

Q. Okay. And just to make sure, you know, did he put his finger inside or did he not?

Q. He put his finger inside."

The record indicates that Patricia Ferris, an investigator for the Department of Children and Family Services, received a report concerning the alleged molestation of the victim. Ferris interviewed the victim at school on March 7, 1985. The victim indicated to Ferris that the defendant had touched her around her vagina.

Following her interview with the victim, Ferris went to Hoopeston High School with Sergeant Dennis Carter of the Hoopeston police department to speak with the defendant. At this March 7, 1985, questioning, Ferris and Carter were seated in an empty classroom; the school principal escorted the defendant to the room. Both investigators testified that Carter informed the defendant of his rights at this questioning and that the defendant indicated he understood those rights. They also testified that the defendant had never asked for an attorney or indicated he wished to remain silent. The defendant did, however, indicate he was embarrassed to talk with the investigators at school where his friends were present. At Carter's suggestion, the defendant agreed to continue the interview at the police station. The defendant then left with Carter and Ferris for the police station in Ferris' personal automobile. During the March 7, 1985, sessions with the defendant, Carter was dressed in civilian attire and was unarmed, although the defendant was aware of Carter's occupation.

Carter testified that he again informed the defendant of his rights when they arrived at the Hoopeston police station on March 7. None of the defendant's statements on that day were recorded. However, Ferris testified that the defendant told her at the police station that "he had put his finger in [the victim] two times, and then he went into the bathroom and would masturbate."

The defendant testified at trial and denied any sexual contact with the victim.

At some point during the March 7 questionings, the defendant asked a question concerning his right to an attorney. The defendant testified that he asked Carter "how can I get a lawyer if I do any talking?" Sergeant Carter also testified that the defendant had asked him about the procedure to appoint counsel. Carter stated that he told the defendant that he could fill out a form and the court would ap-

point an attorney for the defendant if he so desired.

The defendant did not remain in custody on March 7, 1985; he was released after about an hour of questioning. The following day, Sergeant Carter, in uniform and in a marked police car, spoke to the defendant outside Hoopeston High School. When the defendant indicated he planned to leave town, Carter placed him under arrest and transported him to the police station in the front seat of the squad car. Carter testified that he allowed the defendant to ride in the front seat, rather than the rear, because the defendant appeared to be emotionally upset. Carter again questioned the defendant at the Hoopeston police station and obtained a written statement in which the defendant admitted to placing his finger inside the victim's vagina. In this first written statement, the defendant stated his age, that he understood the rights that had been read to him and that he had no questions about those rights. Shortly after the first statement, Carter obtained a second statement from the defendant in which he stated that he was in the 12th grade, could read and write, and acknowledged that he understood that he had a right to a lawyer, to remain silent, and to have a lawyer present during questioning. Carter testified that he took this second statement, in part, because he was aware of the defendant's low IQ.

Prior to trial, the defendant filed a motion to suppress all statements which he had given to Ferris or to Sergeant Carter on March 7 and 8. He alleged that he was unable to understand his rights and that he had not knowingly waived his right to remain silent. At the suppression hearing, the trial court had before it a six-year-old psychological report on the defendant. This report rated the defendant's full-scale IQ (Wechsler) at 60 and placed him within the "Mildly Mentally Impaired" category. The record also indicates that the defendant had been educated through the special education process. The defendant testified at the hearing that he had admitted sexual contact with the victim only to get Carter "off my back."

Following the testimony at the suppression hearing, the court indicated that it intended to rule against the defendant. The court determined that the March 7, 1985, questionings at the high school and at the police station were noncustodial and that the defendant was transferred to the police station at his own request. The court found that at the March 8, 1985, police station questioning, the defendant was in custody. The court determined that the defendant understood his rights on each of those occasions and voluntarily waived them. The court specifically noted that it did not believe the defendant mistakenly believed he could not obtain a lawyer until he made a court

appearance.

After its ruling on the motion to suppress, the court, *sua sponte*, ordered a "full-scale" psychological examination of the defendant "on the issue of competency to stand trial or plead," and to determine his IQ and his abilities in the English language. The next day, prior to trial, and without the examination having taken place, the trial court indicated that it had "no *bona fide* doubt of the defendant's fitness to stand trial." The case then proceeded to trial without objection by the defendant.

At the close of trial testimony, the court instructed the jury on elements of aggravated criminal sexual assault (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1)). The court refused the defendant's proffered instruction on aggravated criminal sexual abuse (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—16(c)(1)).

On appeal, the defendant claims the trial court erred in failing to instruct the jury on the elements of aggravated criminal sexual abuse. The defendant also urges that the State failed to prove that he was at least 17 years of age at the time of the offense, which is an element of the crime; that the court erroneously failed to suppress the defendant's statements; that the court erroneously failed to complete the psychological exam once ordered; and that the trial court erred in permitting the State to ask leading questions of the victim on direct examination.

■ We turn first to the defendant's argument that the trial court should have instructed the jury on the elements of aggravated criminal sexual abuse. The law is clear that a court should instruct the jury on an included offense only when there is evidence which would permit the jury to find the defendant guilty of that offense. (*People v. Preston* (1930), 341 Ill. 407, 173 N.E. 383; *People v. Rangel* (1982), 104 Ill. App. 3d 695, 432 N.E.2d 1141.) A reviewing court should not weigh the evidence upon a question of whether an instruction is proper on a certain theory. (*People v. Hall* (1975), 25 Ill. App. 3d 992, 324 N.E.2d 50.) Thus, very slight evidence upon a certain theory of the case justifies giving an instruction. (*People v. Kalpak* (1957), 10 Ill. 2d 411, 140 N.E.2d 726.) Moreover, a defendant is entitled to such an instruction even though it conflicts with his theory of the case. *People v. Scalisi* (1926), 324 Ill. 131, 154 N.E. 715.

Section 12—14(b)(1) of the Criminal Code of 1961 (Code) states that an accused commits aggravated criminal assault if "the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed ***." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(b)(1).)

The statute defines sexual penetration as "any intrusion, however slight, of any part of the body of one person *** into the sex organ *** of another person ***." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—12(f).) Aggravated criminal sexual abuse occurs if "the accused was 17 years of age or over and commit[ted] an act of sexual conduct with a victim who was under 13 years of age when the act was committed; ***." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—16(c)(1).) The Code defines "sexual conduct" as "any intentional or knowing touching or fondling by the victim or the accused [of] *** any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—12(e).

■ The difference between the assault charge, of which the defendant stands convicted, and aggravated criminal sexual abuse lies solely in the fact that the assault charge requires proof of sexual penetration. The evidence in the present case most clearly supports the assault charge. The defendant's out-of-court statements, Ferris' and Carter's testimony of what they heard from the defendant, and the victim's testimony on direct examination all support the defendant's conviction for aggravated criminal sexual assault. However, we note that the victim's testimony on cross-examination suggests the possibility that there was no penetration during the incidents. We conclude this latter evidence required the trial court to instruct the jury on the included offense of aggravated criminal sexual abuse. In failing to so instruct the jury, the trial court committed reversible error.

Since this cause must be remanded for a new trial, we will briefly address the other issues raised by the defendant in an effort to guide the trial court. The defendant urges that his statements, which were admitted into evidence against him at trial, stem from an unknowing and involuntary waiver of his constitutional right to remain silent. In particular, the defendant argues that testimony adduced at the suppression hearing showed that Sergeant Carter erroneously led him to believe that he could not obtain counsel until he had made a court appearance.

■ ■ A trial court's finding that a defendant voluntarily waived his rights need not be proved beyond a reasonable doubt; such a finding will be overturned on appeal only if against the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) In this regard, the appellate court has recognized that the trial court is in the best position to judge a witness' credibility in hearing a motion to suppress evidence. The trial court need not accept the defend-

ant's version of the circumstances in preference to other testimony. (*People v. Pinkham* (1985), 139 Ill. App. 3d 554, 487 N.E.2d 707; *People v. Eckles* (1984), 128 Ill. App. 3d 276, 470 N.E.2d 623.) Finally, although a defendant's subnormal IQ is a factor to consider in determining the voluntariness of a waiver of rights, subnormal IQ does not eliminate the possibility of a voluntary waiver. *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408; *People v. Berry* (1984), 123 Ill. App. 3d 1042, 463 N.E.2d 1044.

■ In the present case, the trial court was aware of the defendant's limited intellectual capacity and had the opportunity to observe the defendant as he testified during the suppression hearing. Moreover, the trial court specifically found that the defendant was not confused concerning his right to an attorney. Finally, the record reflects that the defendant was reasonably articulate during his testimony and understood the function of defense counsel when questioned on the stand. Although we cannot overemphasize the need to explain a defendant's rights in language he can understand, we cannot conclude that the trial court erred in failing to suppress the present defendant's statements.

■ Since the defendant's fitness to stand trial may once again be an issue upon remand, we address the defendant's arguments concerning the trial court's failure to follow through with a psychological examination. The law requires the trial court to hold a hearing upon the issue of a defendant's fitness to stand trial or plead if there exists any *bona fide* doubt as to the accused's ability to understand the nature and purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1985, ch. 38, pars. 104—10, 104—11.) The defendant's low mental capacity is not enough, of itself, to create a *bona fide* doubt. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Likewise, the mere fact that the court ordered a fitness examination did not establish that *bona fide* doubt was present (*People v. Russo* (1972), 52 Ill. 2d 425, 288 N.E.2d 412, *cert. denied* (1973), 410 U.S. 940, 35 L. Ed. 2d 606, 93 S. Ct. 1403; *People v. Armstrong* (1976), 43 Ill. App. 3d 586, 357 N.E.2d 84) particularly since defense counsel had not questioned the defendant's fitness. Nevertheless, the trial court's actions in first ordering a psychological examination of the defendant and then proceeding to trial without benefit of that examination potentially raises the concern that the court was sacrificing statutorily mandated protections to mere expediency. Should *bona fide* doubt of the defendant's fitness arise, trial should be postponed pending resolution of the issue.

The defendant's arguments concerning the sufficiency of the evidence against him and the leading questions asked of the victim at trial are without merit. In light of our disposition of this case we see no need to discuss them further.

The circuit court erred in failing to instruct the jury on the elements of aggravated criminal sexual abuse when requested to do so by the defendant. Accordingly, we reverse the defendant's conviction and remand this cause for a new trial.

Reversed and remanded.

McCULLOUGH, P.J., and WEBBER, J., concur.