·THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BERNARD IVORY, Defendant-Appellant.

Second District   No. 2—90—0047

Opinion filed August 22, 1991.

G. Joseph Weller and Francine Harrison, both of State Appellate Defender's Office, of Elgin, and Ronald D. Haze, of Chicago, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Defendant, Bernard Ivory, was charged in the circuit court of Stephenson County with armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)). Following a jury trial, defendant was convicted of robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1(a)) and sentenced to a term of four years' imprisonment. Defendant filed a post-trial motion contending only that the State failed to prove him guilty beyond a reasonable doubt and that the verdict was contrary to the evidence. The motion for a new trial was denied.

The central issue raised on appeal is whether the trial court erred in instructing the jury over defendant's objection on the lesser-included offense of robbery where the defense was based on an alibi and misidentification. As a secondary issue, defendant contends that his trial counsel's failure to preserve the jury instruction issue in the post-trial motion constituted ineffective assistance of counsel.

The only witness to the robbery was Dennis Hunziker, an employee at the Super Valu store in Freeport, Illinois. He testified that when the robber entered the store shortly after 3 a.m. on April 23, 1989, he was wearing a white scarf or towel wrapped around his head, a black jacket, black pants, and a skintight shirt with a silver or gold object on it in the "high belt buckle area." The robber said, "Give me your money" and "Don't give me no shit. I got a .22 automatic." Hunziker saw only the handle of a gun sticking out of the robber's pocket. It had wood grain grips and was lined with blue steel. He never saw the whole gun. Hunziker took the drawers out of the

cash register and the robber grabbed the $10 and $20 bills. Four hundred and fifty dollars was taken from the drawer.

As the robber fled, he attempted to exit the wrong door. Officer Robert Smith of the Freeport police department testified that prints taken from the door did not match defendant's prints. The robber eventually left the store and walked backward out the parking lot and fled. Hunziker thought he knew the robber and that he went to high school with him. Testimony later established that defendant and Hunziker were in high school together. Although Hunziker was "not 100 per cent" certain when he initially identified defendant as the robber, when he identified defendant in court, he was "100 per cent certain."

During the late hours of April 22 and early morning hours of April 23, 1989, defendant was seen at the Silver Knight's Club. Defendant was wearing black denim pants, a black or turquoise shirt, a medallion and a brown leather jacket. According to Clyde Butler, who was working as security at the club, defendant was also wearing an unusual, large belt buckle which had something to do with truck driving. Butler testified that he had a conversation with defendant about the belt buckle. However, defendant denied having such a conversation and testified that the belt buckle was a small, square cowboy belt buckle.

Kevin Wade, who had walked to the club, met defendant there. Defendant and Wade left the club in a van borrowed from Wade's stepbrother. They then drove to Thomas Herron's house and later proceeded to Terry Collins' home. On the way to Collins' home, Wade and defendant met two men walking along the street. The two men were William Sperry and Darren Ross. Both testified that they were intoxicated. Sperry and Ross did not know defendant and Wade. Sperry and Ross entered the van and proceeded to the Super Valu store.

According to defendant, they arrived at the Super Valu at about 2 a.m. However, Hunziker testified that they arrived at 3 a.m. Only Wade and Sperry entered the store. Because Ross and defendant stayed in the van, Hunziker did not see them. Sperry attempted to write a check for an amount over the purchase price. However, the store's limit for overwriting was $5. Wade and Sperry returned to the van. Sperry was upset because he could not get more cash. A short conversation arose about robbing the store.

They then left the store. Sperry and Ross were dropped off at Sperry's house around 3 a.m., according to Sperry. Defendant testified that they also stopped at Collins' home. Defendant and Wade

then returned to the Super Valu. Wade went into the store and purchased two packs of cigarettes. Defendant remained in the van.

When Wade returned, defendant and Wade had a discussion regarding who would drive the van. Apparently neither Wade nor defendant had a driver's license. Defendant then drove the van across the street and parked next to a Honda dealership. Defendant and Wade were still arguing about who would drive the van. Defendant then exited the van and told Wade, "I'm going to get ready to leave and stay over here by the van. I'll be back."

Defendant testified that he then went behind the Honda dealership building to relieve himself. As he was walking behind the building, he continued to talk to Wade about driving but heard no response. According to defendant, when he returned to the van, Wade was gone. Defendant called for Wade, then drove to Collins' home and arrived there a few minutes before Wade.

Wade testified that when defendant went to the back of the building, he left the van and walked across a field toward Collins' home. When he got halfway across the field, he heard defendant call his name and saw defendant drive towards Collins' home. He arrived at Collins' home shortly after defendant.

Collins testified that defendant and Wade arrived at his home at 2:30 a.m. Defendant arrived before Wade. He got dressed and drove them to Herron's house and dropped them off. The van was left at Collins' home. According to Collins, he returned to Herron's and picked him up at about 4:30 or 5 a.m.

At the jury instructions conference, the State offered instructions on the uncharged, lesser-included offense of robbery. The State contended that the evidence presented could have shown that defendant committed robbery but not armed robbery. Defendant's counsel objected to these instructions but did not raise the issue in the post-trial motion.

Defendant contends that the trial court erred by instructing the jury at the State's request and over his objection on the lesser-included offense of robbery. Defendant claims that, because his theory of defense was alibi and misidentification, he was either guilty of armed robbery or not guilty of any offense. Defendant claims we should review this issue under the plain error doctrine because the error denied him a fair and impartial trial. The State contends that the propriety of giving the lesser-included offense instruction depends on the evidence adduced at trial. The State contends that because the evidence could have allowed the jury to convict defendant of robbery, the instruction was proper.

■ Under Supreme Court Rule 451(c) (134 Ill. 2d R. 451(c)), "substantial defects [in instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require." This exception to the waiver rule is restricted to "grave errors" or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Huckstead* (1982), 91 Ill. 2d 536, 544, 440 N.E.2d 1248.

■ Although typically it is the defendant who seeks instructions on the lesser-included offense (see, *e.g., People v. Rodarte* (1989), 190 Ill. App. 3d 992, 547 N.E.2d 1256; *People v. Willis* (1988), 170 Ill. App. 3d 638, 524 N.E.2d 1259; *People v. Caplinger* (1987), 162 Ill. App. 3d 74, 514 N.E.2d 1221), in this case the State sought the instruction. The rule in the former cases is clear, namely, that an instruction on a lesser-included offense will be given upon a defendant's request if there is slight evidence showing the offense, even if the instruction conflicts with the defendant's theory (*People v. Creamer* (1986), 143 Ill. App. 3d 64, 69, 492 N.E.2d 923), but will not be given if the jury could only rationally find the defendant guilty of the greater offense or not guilty of any offense (*People v. Moore* (1990), 206 Ill. App. 3d 769, 774, 565 N.E.2d 154). However, the rule in cases such as this where the State requests the lesser-included offense instruction is not well defined.

■ It is settled that, if the evidence admits of but one conclusion which is that the accused, if guilty at all, is guilty of the crime charged, it is error to give an instruction authorizing a conviction for a lesser-included offense, and a defendant has a right to keep the jury from receiving instructions on an uncharged, lesser-included offense where, for example, the defense is alibi or mistaken identity. (*People v. Falkner* (1985), 131 Ill. App. 3d 706, 710, 475 N.E.2d 964.) The rationale that defendant has a right to refuse a lesser-included offense instruction is that such an instruction prejudices the defendant by inviting the jury to return a compromise verdict rather than continue to debate defendant's innocence. (*People v. Keagle* (1967), 37 Ill. 2d 96, 102, 224 N.E.2d 834; 75 Am. Jur. 2d *Trial* §878 (1974).) However, it is misleading to speak of the "right" to require a jury to pass only upon a defendant's guilt or innocence of the greater offense. (*People v. Taylor* (1967), 36 Ill. 2d 483, 488-89, 224 N.E.2d 266.) In *dicta*, our supreme court in *People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266, stated, in the context of murder/manslaughter verdicts, the following:

> "If a jury trial is waived, the judge determines from the evidence whether the defendant is guilty of murder or of some

lesser included offense, and the defendant has no 'right' to restrict the judge's determination to the question of his guilt or innocence of murder. (See, *e.g., People v. Green*, 23 Ill. 2d 584.) And if the evidence would support a verdict of manslaughter, a defendant will not be heard to complain that a manslaughter instruction was given, even though he did not request it. 'Where the record contains evidence upon which a verdict of manslaughter may be returned, the fact that the evidence would have justified the jury in finding the defendant guilty of murder is not a matter of which he can complain.' (*People v. Beil*, 322 Ill. 434, 440; see also *People v. White*, 311 Ill. 356). ***

*** So it has been said, 'The general statement contained in the cases, that a manslaughter instruction should be given where there is evidence justifying it, must be understood in the sense the duty exists when such instruction is offered by either side, when the circumstances justify it, but does not apply to cases where no instructions for manslaughter are offered in the case.' " *Taylor*, 36 Ill. 2d at 488-89, 224 N.E.2d at 269-70, quoting *People v. Weisberg* (1947), 396 Ill. 412, 422, 71 N.E.2d 671, 677.

Defendant relies on *People v. Rangel* (1982), 104 Ill. App. 3d 695, 432 N.E.2d 1141, to support his contention that the trial court committed grave error by instructing the jury on the offense of robbery. In *Rangel*, the defendant was charged with burglary. The State sought instructions on the lesser-included offense of attempted burglary, and the instructions were given. All the evidence on both sides showed that the defendant entered the house without authority. However, defendant contended that he did not have criminal intent because he was intoxicated. The appellate court held that, because the case was an "all-or-nothing" case, meaning the defendant was guilty of burglary or not guilty of any offense, the trial court erred by giving attempted burglary instructions. *Rangel*, 104 Ill. App. 3d at 701, 432 N.E.2d at 1145.

*Rangel* is not controlling here because the present case is not an "all-or-nothing" case. Unlike *Rangel*, all the evidence on both sides did not show that the robber was armed.

In *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063, a case very similar to this one, the defendant was indicted for armed robbery, but the State sought instructions on the lesser-included offense of robbery. The instructions were given over the defendant's objection. During trial, the victim testified that the defendant was armed with what "appeared to be a small knife."

(*Nicholson*, 61 Ill. App. 3d at 623, 377 N.E.2d at 1065.) In affirming the trial court, the appellate court held that, although an instruction on the lesser-included offense of robbery is considered to be improper where the evidence shows that the accused is either guilty of the higher offense of armed robbery or not guilty of any offense, this principle is not controlling if the evidence raises a factual issue. (*Nicholson*, 61 Ill. App. 3d at 624, 377 N.E.2d at 1067.) The court concluded that because the jury could have reasonably interpreted the victim's statement as indicating that the defendant was not armed, and it is not necessary for a defendant to directly challenge the State's evidence to raise a factual issue, the trial court did not err in instructing the jury on the lesser-included offense of robbery. *Nicholson*, 61 Ill. App. 3d at 625, 377 N.E.2d at 1067.

■ We believe *Nicholson* is controlling in this case. Hunziker testified that he saw only the handle of the gun. He never saw the whole gun. Wade testified he did not see defendant or anyone else with a gun that evening. Further, defense counsel questioned Hunziker as to whether the gun handle could be confused with a screw driver thereby implying a factual question on this issue. The evidence raised a factual issue as to whether defendant was armed which was one of the elements of the crime of armed robbery which the State had the burden to prove. Therefore, the trial court did not err by instructing the jury on the lesser-included offense of robbery. Because it was not error to give the instruction, there was no grave error.

Defendant next contends that his trial counsel's failure to preserve the issue of the jury instructions constituted ineffective assistance of counsel. Because it was not error to instruct the jury on the offense of robbery, trial counsel's failure to preserve the issue did not deprive defendant of a fair trial.

The judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

BOWMAN and NICKELS, JJ., concur.