THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY BRYSON, Defendant-Appellant.
Second District   No. 79-135

Opinion filed June 25, 1980.

Mary Robinson, of State Appellate Defender's Office, of Elgin, and Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Chicago, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Larry Bryson, was charged by information with attempt murder (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4(a), 9—1(a)(1)), aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(1)), attempt armed robbery (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4(a), 18—2(a)), and armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2). After trial by jury, he was acquitted of attempt murder but convicted of the other offenses and thereafter was sentenced to 15 years' imprisonment for armed violence.

Defendant brings this appeal contending the jury should have been instructed as to self-defense and that the trial court erred by informing the jury that transcripts of the testimony would not be available to them.

The charges grew out of a marijuana transaction where, when payment was requested from them, defendant and his friend Lester Spurille drew guns and fired three or four shots, one of which wounded the seller, Jeffrey Sorn. When called as a witness by the State, Sorn testified that on June 20, 1978, he went to the Waukegan home of Michael Nelson where he met Nelson, four of Nelson's friends and two other men, one of whom was Lester Spurille. When Spurille asked Sorn to sell him some marijuana, Sorn produced it and those present smoked a marijuana cigarette, after which Sorn asked for payment. Spurille and his companion thereupon drew guns, and as Spurille reached for the bag of marijuana he fired his gun, the bullet hitting the bag and scattering its contents. Sorn testified that he turned to run from the room and was shot in the back by, he believed, Spurille's companion, who was the only armed person behind him, although Sorn did not see who fired that shot. Sorn did not identify defendant as Spurille's friend.

Nelson, also called by the State, essentially corroborated Sorn's testimony and made an in-court identification of defendant Bryson as Spurille's companion. Nelson testified that Spurille fired his gun first but only once, hitting the bag of marijuana; he testified three more shots were also fired at that time by someone else. When the shooting ended, Nelson threw the contents of his glass of beer in Spurille's face. He agreed with Sorn's testimony that the only persons armed with guns during the incident were Spurille and defendant Bryson.

James Thorne, one of Nelson's friends, also identified defendant, and testified that defendant drew a gun a second or two after Spurille drew his gun and that he saw no other weapons in the room. Thorne said he heard a shot and saw Nelson throw the beer in Spurille's face; Thorne then hid behind a refrigerator and heard three more shots. Two other persons who had been present identified defendant as Spurille's companion and described hearing shots fired after they had fled the room as soon as the guns were drawn by defendant and Spurille.

Defendant testified that Spurille gave him a revolver on their way to the Nelson house because Spurille was unfamiliar with the people with whom they would be doing business and did not know if they would "get ripped off or not." He stated that after the marijuana cigarette had been smoked by the men he saw someone, perhaps Sorn, reaching toward Spurille and saw Nelson holding a glass toward Spurille. Defendant next heard a shot and reached for his revolver. He stated he fired once toward a storage room and fired again while stepping toward the back door of the house to leave. Although defendant acknowledged that one of the

shots he fired could have hit someone, he denied that he intended to kill anyone or steal anything, stating:

"Well, when I shot my pistol, what went through my mind, I heard a shot, I seen out of the corner of my eye what looked like two people attacking my friend. I didn't know what neighborhood I was in, I didn't know what house, how many was in the house. I didn't know where the shot had come from. Hey, they could have been shooting at me. I don't know."

Defendant first assigns error to the trial court's rejection of two self-defense instructions tendered by him drawn from Illinois Pattern Jury Instructions, Criminal, No. 24.06 (1968):

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent great bodily harm to himself or another." (Defendant's tendered instruction No. 1.)

Defendant's tendered instruction No. 2 was identical except that it added to the last line "or the commission of a forcible felony." The trial court sustained the State's objections to the giving of either instruction on the grounds there was no evidence to support their use.

Defendant had testified in trial that he fired his gun three times, aiming away from people, just to make noise so he could escape from the Nelson house. He said that after smoking the marijuana cigarette along with other persons present, "enjoying the high," he heard a shot which he could only say came from somewhere within the house and then saw Nelson, and perhaps Sorn also, reaching toward Lester Spurille. Defendant then testified:

"I said what appeared to me that they was attacking him. It looked—well, Jeff Sorn was reaching over in his direction, and I see Mike Nelson, he got a glass in his hand, and it's anywhere from eight to ten inches from Lester's face."

Later during defendant's testimony there was this exchange:

"Q. [Prosecutor]: * * * you saw two people were attacking your friend? Is that correct?

A. [Defendant]: I did not say 'attacking.' I said what seemed to me one was reaching toward him, the other one had a glass a couple of inches from his face. It might have been they was getting into something. I don't know. It wasn't any argument or nothing, you know. It just happened."

Sorn, Nelson and Thorne all testified to the beer-throwing incident and were in agreement that it did not occur until after Spurille had already drawn and fired his gun.

Defendant's argument on this issue relies primarily on this court's opinions in *People v. Boisvert* (1975), 27 Ill. App. 3d 35, 325 N.E.2d 644, and *People v. Woodward* (1979), 77 Ill. App. 3d 352, 395 N.E.2d 1203, and also on *Zemina v. Solem* (D.S.D. 1977), 438 F. Supp. 455, *aff'd per curiam* (8th Cir. 1978), 573 F.2d 1027. As we noted in *Boisvert*, a defendant is entitled to an instruction on any defense shown by the entire evidence even if that evidence is conflicting and the defendant's testimony is impeached; and the trial court may not weigh the evidence in making its determination. (27 Ill. App. 3d 35, 41, 325 N.E.2d 644, 648.) *Zemina v. Solem* found a violation of the Sixth Amendment right to trial by jury where self-defense instructions which find support in the evidence are tendered and refused.

In *People v. Woodward* the defendant's conviction for voluntary manslaughter was reversed when the trial court refused to instruct the jury on the complete defense of self-defense. We recognized, however, that a self-defense instruction is proper only if there is "some evidence" of a reasonable belief on the part of defendant that the use of deadly force was necessary. (77 Ill. App. 3d 352, 357, 395 N.E.2d 1203, 1207; Ill. Rev. Stat. 1977, ch. 38, par. 3—2(a).) In *Woodward* the jury was instructed as to murder, voluntary and involuntary manslaughter, but IPI Criminal No. 24.06 was also tendered and refused as in the present case. Defendant seeks to draw an analogy between the facts of this case and those of *Woodward*. We do not agree that the cases are analogous, however, as in *Woodward* there was evidence that defendant may have acted under a reasonable belief of necessity.

■■ Having carefully considered the record, we find no error in the trial court's refusal of the tendered self-defense instructions as there is no evidence of a reasonable belief on the part of defendant that deadly force was necessary to protect his friend or himself from great bodily harm. (*People v. Allen* (1972), 50 Ill. 2d 280, 278 N.E.2d 762; *People v. Miller* (1974), 21 Ill. App. 3d 762, 316 N.E.2d 269.) He testified that no argument preceded the gunfire; that no one struck his friend Spurille, whom he knew had a gun; and that Nelson and his friends were unarmed. The beer was not even thrown at Spurille until after he had drawn and fired his gun. (See *People v. Pitchford* (1976), 39 Ill. App. 3d 182, 350 N.E.2d 170.) We conclude the instructions were properly refused.

Defendant also contends the trial court erred in stating during voir dire examination of the jurors that:

"Another thing that you probably have seen on television, but it doesn't happen here, is don't ask for a transcript of somebody's

testimony because we don't have a transcript. We can't afford transcripts. We can, if you ask for them and give the reporter five or ten days to produce it, then you could have it. But you must depend on your collective memories * * *."

Defendant suggests that the trial judge was either not aware of his discretionary power to have testimony reread to the jury, or was anticipatorily refusing to exercise that discretion. He argues the court's remarks had a chilling effect on the jury's right to request a review of testimony during deliberations and requires reversal and remandment for a new trial.

■■ We note first that as no objection was made to these remarks at trial and the issue was not preserved in defendant's motion for a new trial this claim of error has been waived. *People v. Virgin* (1973), 9 Ill. App. 3d 902, 293 N.E.2d 349.

■■ In *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166, the trial court refused a request by the jury during its deliberations for a review of the defendant's testimony, stating, "I cannot have any testimony of any witnesses read to you * * *." Our supreme court found error "when a trial court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented." (56 Ill. 2d 560, 565, 310 N.E.2d 166, 169.) Contrary to defendant's suggestion, we see no parallel between *Queen* and the case at bar. Having a transcript of testimony made is not so readily accomplished as is having testimony read from a court reporter's notes. Furthermore, the remarks made in the present case do not suggest the trial judge was unaware of, or refusing to exercise, his discretionary power to have testimony read, but only that it was not feasible to have a transcript of testimony made. In the context of the present case we find no error in the trial judge's remarks; nor did the remarks have any apparent prejudicial effect on defendant. See *People v. Hemphill* (1978), 62 Ill. App. 3d 977, 379 N.E.2d 1284.

The judgment of the Circuit Court of Lake County is therefore affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.