THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEROY GLASS, Defendant-Appellant.

Second District    No. 79-764

Opinion filed March 17, 1981.

Mary Robinson and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HOPF delivered the opinion of the court:

Defendant, Leroy Glass, was charged by information with the offense of murder in connection with the homicide of one Willie Bester. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1.) Upon a jury trial, defendant was found to be guilty as charged. Judgment was entered on the verdict and the defendant was sentenced to serve a term of confinement in the Illinois State penitentiary of 20 years.

From entry of the judgment of conviction, defendant appeals, contending (1) that the trial court erred in refusing to instruct the jury on voluntary manslaughter where the jury was instructed on self-defense; (2)

that a defense witness was improperly impeached by his post-arrest silence; and (3) that the defendant had been denied a fair trial by the prosecutor's misstatement of evidence during rebuttal argument. A review of the evidence establishes that on the afternoon of August 5, 1978, Willie Bester died of gunshot wounds suffered in the course of an altercation with the defendant. This occurred at the decedent's residence located at 1130 Pond Street in Aurora, Illinois.

At trial, the State adduced testimony from the victim's two daughters, Carrie Mae Bester and Ruth Harris. They testified that on the afternoon in question, the defendant, an acquaintance of the victim, arrived at their home driving a white and brown "T Bird." The victim requested the defendant and his daughters to do an errand for him and to pick up some wine. Upon their return, all four sat talking and drinking. The defendant left on another occasion returning with a man he introduced as Buddy (also referred to as Birdie Webber). The group continued drinking and talking. Carrie Mae Bester testified that later she walked to the bathroom in the rear of the home. Defendant followed her and made overtures to her. At her refusal, a mutual slapping occurred, and when he struck her with his fist she called for her father. When he arrived in the back room, he pushed the defendant down on a bed. He eventually let the defendant up, but ordered him from the house. Carrie Mae and her father stood in the doorway while defendant went to his car, returned with a gun in his hand, opened the screen door, pointed the gun at the victim and fired several times. The defendant immediately fled the scene. The daughters testified their father never struck the defendant on that day.

Birdie Webber, for the defense, related a different version. He stated that he and the defendant had met the victim's daughters and returned them home. They found the victim sitting on a couch. That Carrie eventually walked to the back of the house and called to defendant. Later he heard defendant yell, "Give me back my money." Carrie Mae called to her father, who jumped up, stuck his hand in his pocket and walked to the back of the house. The defendant called for his help, and he heard the victim say, "I cut his guts out if you come back here and if you don't get out of the house I'm going to cut his guts out anyway." Birdie left. He next heard shots coming from the house. Defendant exited, got in his car and left. Birdie did not see the altercation nor the victim with a weapon.

Defendant's mother testified that she noticed in the afternoon of the day in question defendant had a broken tooth in his mouth and a lump on his head that was bleeding.

Birdie Webber allegedly concealed himself, which led to criminal charges against him for obstruction of justice. On the day that he arrived to testify in this matter he was arrested by the authorities. His counsel advised him not to speak to the police. In accordance with the denial of

the defendant's motion *in limine*, the State cross-examined this witness on his refusal to talk with the prosecutor. The jury was not advised that he exercised his fifth amendment rights.

At the close of the trial, instructions were tendered on both self-defense (Illinois Pattern Jury Instructions, Criminal, No. 24.06 (2d ed. 1968) (hereinafter cited as IPI Criminal)) and voluntary manslaughter (IPI Criminal Nos. 7.05 and 7.06). The court refused the instructions on voluntary manslaughter, but allowed the instruction on self-defense. Though the State acquiesced in the self-defense instruction at trial, the State now adopts the position that the defendant was not even entitled to the self-defense instruction, claiming that there was not sufficient evidence to support this.

■■ In *People v. Bryson* (1980), 85 Ill. App. 3d 448, 451, 406 N.E.2d 939, the court, in discussing *People v. Woodward* (1979), 77 Ill. App. 3d 352, 395 N.E.2d 1203, stated:

> "We recognize, however, that a self-defense instruction is proper only if there is 'some evidence' of a reasonable belief on the part of the defendant that the use of deadly force was necessary. [Citations.]"

Considering the record, it was not error for the trial court to have given this instruction. When viewed from the defense's evidence, there was evidence of an altercation, that the decedent may have been armed with a knife or cutting instrument of some sort. Further, there was some evidence that the defendant had been injured in this altercation.

■■ Having given the instruction on self-defense, we now turn to the necessity of giving voluntary manslaughter instructions, IPI Criminal Nos. 7.05 and 7.06. The Illinois supreme court has recently decided this issue in the case of *People v. Lockett* (1980), 82 Ill. 2d 546, 553, 413 N.E.2d 378. The court ruled that a self-defense and a voluntary manslaughter instruction should be given when any evidence is presented which shows the subjective belief of the defendant that use of force was necessary. Mr. Justice Moran, speaking for the majority, stated at page 553,

> "We can conceive of no circumstance when a judge could determine, as a matter of law, that a jury could find the defendant had a reasonable subjective belief the killing was justified, but that the jury could not find the defendant's subjective belief was unreasonable. So long as some evidence is presented from which a jury could conclude that defendant had a subjective belief, the jury should determine if the belief existed and, if so, whether that belief was reasonable or unreasonable. Consequently, we hold that when the evidence supports the submitting an instruction on justifiable use of force, a tendered IPI Criminal No. 7.05 on voluntary manslaughter also should be given."

Therefore, it is necessary that the case be reversed and remanded for a new trial.

On a retrial, the issue of the impeachment of the defense witness, Birdie Webber, could be raised again. We conclude that the cross-examination on his post-arrest silence was error.

Constitutional considerations as pronounced in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, are not applicable as the post-arrest silence is that of a witness rather than a defendant. (*People v. Moss* (1977), 54 Ill. App. 3d 769, 370 N.E.2d 89.) The issue must be governed by general principles of evidence. There is a threshold question as to whether the post-arrest silence of the witness was sufficiently inconsistent with his trial testimony to warrant its admission for the purpose of impeachment. In *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133, though dealing with a criminal defendant, the court took the position that the assertion of the right to remain silent was not sufficiently inconsistent with later exculpatory testimony to permit using this silence for impeachment. The court reasoned that the failure to explain could be just as much a reliance on his right to remain silent as supporting an inference that the subsequent explanation was a fabrication. In *Moss*, a witness stated that he, in fact, fired the shots which killed the victim. The court permitted impeachment based upon the pretrial silence of the witness. There, however, the record did not disclose that the witness was warned of his right to remain silent pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and therefore could not on appeal claim the silence was based upon the reliance on such warnings.

In *People v. Godsey* (1978), 74 Ill. 2d 64, 383 N.E.2d 988, the court in refusing to permit the impeachment of the defendant's wife for her silence before the grand jury, pointed up the possible prejudices to the defendant when the defense witness is impeached in this fashion. The refusal of a witness to testify or speak because of the exercise of self-incrimination rights may lead a jury to imply that the witness was engaged in illegal activities, which can all too easily be transferred over to the defendant. *United States v. Rubin* (5th Cir. 1977), 559 F.2d 975.

■■ Birdie Webber was advised by his attorney not to talk to the police. Therefore, his silence would be "insolubly ambiguous." It could be nothing more than his reliance upon his constitutional privileges and following the advice of his attorney. Consequently, his silence has not been shown to be inconsistent with his later testimony. Cross-examination on his post-arrest silence should not have been permitted.

This matter is being remanded for a new trial. Therefore, there is no need to inquire into the impact of this on the defendant's trial.

A further point raised on appeal is the alleged improper rebuttal

argument of counsel for the State. The State admittedly had misspoken as to where a bullet had struck the victim in the head. This should be cured on retrial, and as a result no comment is necessary.

Reversed and remanded.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.