THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK MANLEY, Defendant-Appellant.

First District (1st Division)    No. 80-2037

Opinion filed February 16, 1982.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael Shabat, Michele A. Grimaldi, and Thomas J. Murphy, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant Frank Manley was convicted by a jury of murder and was sentenced to a term of 20 years. Defendant contends on appeal that: (1) his right to a fair trial was violated where the State impeached him with prior inconsistent statements made to an assistant State's Attorney and suggested to the jury that he had made another impeaching statement and he was not permitted to show that this other statement was consistent with his trial testimony; (2) the trial court committed reversible error when it instructed the jury on self-defense, but refused to instruct the jury on voluntary manslaughter; (3) the State improperly implied that a defense witness made inconsistent statements and failed to prove the statements; and (4) the trial court made an improper remark to the venire of prospective jurors.

The record discloses that on September 29, 1978, at approximately 9:30 p.m., Derrick Castleberry was shot and killed. Defendant Frank Manley and Kenneth Jones were arrested and each was charged with one count each of murder, voluntary manslaughter and armed violence. Prior to the selection of the jury, a motion for severance of Jones was granted.

Cosetta Castleberry, the mother of the victim, testified that she lived with her son and that on the day of the shooting, she had seen the victim with Alvin McGee. Alvin McGee then testified that on the evening of September 19, 1978, he was at the Castleberry home. He stated that he and the victim left the house at approximately 9 p.m. and went to the area of 53d and Indiana Streets in Chicago. McGee stated that a dice game was in progress and that he recognized one of the players as Frank Manley. He identified defendant and stated that he knew defendant from "around the neighborhood" and because of a prior argument which he had with defendant. According to McGee, he and Castleberry observed the dice game and then went to the home of Thomas Hood. Hood was not at home and Hood's sister stated that Hood had gone to a party. McGee stated that he and the victim had intended to return to the Castleberry home.

McGee testified that upon leaving the building in which Hood lived, they saw Manley and Jones standing on the sidewalk. McGee stated that Kenneth Jones held a shotgun and defendant Manley held a pistol at chest level. McGee stated that the victim began to run and that Jones began to fire his weapon. Subsequently, defendant also began to shoot. McGee stated that after hearing three to four shots, Derrick Castleberry fell about six houses away from the Hood residence. According to McGee, he

stopped a patrol car which was in the area. McGee initially stated that the victim was in possession of a weapon. However, upon further questioning by the State, McGee stated that he had misunderstood the question to be whether a weapon was pointed at either the victim or him. McGee then stated that neither he nor Castleberry possessed a weapon.

On cross-examination, McGee stated that he had told Officer Fisher of the Chicago Police Department that he and the victim had been involved in a prior fight with the persons involved with the shooting. McGee testified that he did not see Jones at the dice game. He stated that he did not hear anyone yell "he's got a gun" while he and the victim were observing the dice game. According to McGee, Jones was 15 feet from Castleberry when Jones began to discharge the shotgun.

Gloria Jean Steele, a Chicago police officer, testified that on the evening of September 29, 1978, she received a call over her radio concerning shots fired at 53d and Michigan in Chicago. She stated that as she proceeded to the location of the reported shooting, she saw Alvin McGee calling that his friend had been shot. She stated that she exited the patrol car and went to the location where Castleberry was lying. She testified that she asked Castleberry who had shot him and he stated that he did not know. She then patted down the victim to ascertain his identity and did not find anything. Steele stated that McGee provided her the descriptions of the assailants which she reported over the police radio. On cross-examination, she testified that she remained at the scene after the victim had left in an ambulance in order to protect the crime scene. She also indicated that she had learned that there had been a fight with the offenders several months prior to the shooting.

Officer Michael Drawhorn of the Chicago Police Department testified next for the State. He stated that he received an assignment concerning a shooting in the 5300 block of South Michigan Avenue. Upon arriving at the scene, Drawhorn and his partner spoke with Alvin McGee and the three of them then went to the Hood residence where they spoke to members of the Hood family. Drawhorn stated that he went to the 5200 block of South Indiana to look for a man named Frank. Upon arriving at the location, he stated that he saw a group of people sitting on a porch. As a second patrol unit arrived, Drawhorn saw Manley put an object under the cushion on which he was sitting. Another officer went to the chair, lifted the seat cushion and removed a gun. Defendant was then placed under arrest. Drawhorn subsequently arrested Jones at another address. At a third address, Drawhorn recovered a sawed-off shotgun. Officer Robert Stephenson corroborated Drawhorn's testimony concerning the recovery of a .22-caliber revolver from Manley and the arrest of defendant.

Officer Thomas Gimmelly testified that he recovered shotgun wad-

ding on the parkway in front of 5317 South Michigan Avenue. Dr. Shaku Teas, a pathologist with the Cook County medical examiner, testified that she performed an autopsy on the body of Derrick Castleberry. She stated that the cause of death was shotgun wounds to the chest, arm, trunk and abdomen. She stated that she also recovered a bullet from the chest. Officer Robert Smith testified as an expert in firearms and firearms identification. He stated that he conducted ballistics tests and that the bullet which he received from the morgue was fired from the same gun which was previously identified as the weapon recovered from defendant.

The first defense witness was Johnell Brock who stated that on the evening of the shooting he had seen the deceased with a gun at approximately 7 or 8 p.m. He testified that a girl shouted "He has a gun" and that the people who were involved in a dice game ran. Defendant Frank Manley testified that on the evening of the shooting, he saw Alvin McGee with the victim. He stated that he had a prior argument with McGee. Manley stated that Kenneth Jones told him that someone had displayed a gun. Jones then asked Manley where Manley had his gun and Manley responded that the gun was in his pocket. Manley stated that Jones was carrying a sawed-off shotgun. Manley testified that he and Jones left the dice game and walked to 5315 South Michigan Avenue. According to defendant, the victim had his right hand in his coat pocket and began to approach him and Jones. He stated that Castleberry began to remove a black pistol from his pocket. He testified that Jones then fired the shotgun. Manley stated that he had difficulty in extricating his gun and when he finally did remove the gun, he fired two shots into the air.

On cross-examination, Manley stated that Jones had told him that Jones had been threatened with a gun by an individual, but that he only learned after the shooting that it was Castleberry who had threatened Jones. Defendant testified that he only fired his weapon after Jones first had discharged the shotgun and only after he thought the victim was going to pull a gun. After the shooting, Manley stated that he went to a friend's home and was sitting on the porch. After a sidebar concerning the questioning of defendant concerning statements which he had made to assistant State's Attorney Ronin, the court ruled that the prosecution could impeach defendant with a prior inconsistent statement. Upon resumption of cross-examination, defendant admitted that he first told Ronin that he was watching television at 5 p.m. on the evening of the shooting, that at 6 p.m. he went to a friend's house, and at 7 p.m. he and his friend went to a liquor store and afterwards went to the home of another friend which is where he was arrested. In addition, Manley had told Ronin that at approximately 9 p.m. he had heard a gunshot and that he fired his gun two or three times in the air. Manley conceded that the first story that he

told the assistant State's Attorney was different from the second story, but denied that he had told Ronin a third story.

Upon redirect examination, counsel sought to question Manley concerning the third statement. The State objected and reminded the court that this statement had been excluded through a motion *in limine* which was made at the beginning of the trial. Defense counsel argued that this story was contained in the same dialogue as the inconsistent statements. The court ruled that Manley was not being impeached on the issue of whether Castleberry removed a gun from his belt and, therefore, the third statement was not admissible.

On rebuttal, the State called three witnesses. The sister of Thomas Hood testified that she had an opportunity to observe inside Castleberry's jacket when she spoke with him prior to the shooting and that she did not see a weapon. A second witness stated that she saw the victim turn to his left and run at the time he was shot. The witness also stated that she did not see the deceased search his pocket or remove a weapon.

During the conference on jury instructions and verdict forms, counsel for the defense tendered Illinois Pattern Jury Instructions, Criminal, Nos. 7.05 and 7.06 (1968) (hereinafter IPI), which deal with voluntary manslaughter in the case. The court agreed to give IPI Criminal No. 24.06 which instructs the jury on the justifiable use of force.

Following the conference, the State presented assistant State's Attorney Ronin as its final rebuttal witness. Ronin testified as to the two statements which defendant made concerning the evening of the shooting. He also alluded to a third statement during cross-examination, although the court refused to permit counsel to inquire as to the contents of this third version. Counsel for defendant made an offer of proof concerning this third story on the grounds that it was part of a continuous conversation between Manley and Ronin. The court denied the offer because the statement was self-serving, hearsay and irrelevant.

Subsequently, the jury found defendant guilty of murder. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(1).) Counsel's motion for a new trial based upon the failure of the court to give a voluntary manslaughter instruction was denied. Thereafter, the court sentenced defendant to a term of 20 years.

Defendant first argues that the trial court erred when it refused to permit counsel for defendant to question defendant about a third statement concerning the shooting which was made to assistant State's Attorney Ronin. Prior to trial, the court granted the State's motion *in limine* to bar defendant's attorney from referring to a prior statement which was consistent with defendant's claim of self-defense. In barring the statement, it is unclear whether the court precluded the parties from referring to the entire statement which consisted of three versions of the

shooting or whether the court barred counsel for defendant from referring to the third portion of that statement which was consistent with defendant's theory of self-defense. Following direct examination of defendant concerning his actions in self-defense, the State sought to impeach defendant by questioning Manley about two versions of the shooting which he had made to Ronin. Manley conceded that he had given two versions to Ronin. On redirect examination, defendant's attorney sought to rehabilitate defendant through questioning about a third version of the events which was consistent with the self-defense theory. The State's objection to this line of questioning was sustained. Defendant argues that by barring questioning about this third statement, the jury was led to believe that there was a third version of the shooting and that it is incumbent upon the State to correct false or misleading testimony. (*Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173.) Defendant also urges that the court should have permitted his rehabilitation following impeachment with a prior inconsistent statement by permitting the introduction of the remaining consistent portions of his statement. (See E. Cleary and M. Graham, Handbook of Illinois Evidence §106.1 (3d ed. 1979).) Defendant also claims that the State raised the inference of "recent fabrication" and that, under these circumstances, a prior consistent statement would be admissible for rehabilitation. *People v. Rivera* (1975), 32 Ill. App. 3d 500, 336 N.E.2d 255.

■■ In Illinois, the general rule is that a witness who has been impeached by a prior out-of-court statement which is inconsistent with his in-court testimony cannot introduce evidence of other prior statements which are consistent with his in-court testimony (see *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. DePoy* (1968), 40 Ill. 2d 433, 240 N.E.2d 616.) However, such evidence is admissible to rebut an inference that the witness is motivated to testify falsely or to rebut an inference that the testimony is of recent fabrication. The testimony is admissible to show that the witness told the same story before the motive came into existence or before the recent fabrication. (See *People v. Clark.*) The third version of the events surrounding the shooting does not fall within either of these two exceptions. At trial, there was no inference raised that Manley was motivated to testify falsely, nor was there any inference raised that Manley's statement was of recent fabrication. The self-defense version of defendant's statement to Ronin was given subsequent to his other versions which were inconsistent with his testimony at trial. Accordingly, the trial court did not err in its refusal to permit the introduction of this third version or to permit the questioning of defendant concerning his self-defense statement.

■■ Defendant next argues that the trial court erred when it gave the jury an instruction on the justifiable use of force, but refused to instruct the

jury on voluntary manslaughter as required by *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378. The State has confessed error and conceded that the trial court did commit error when it refused to instruct the jury on voluntary manslaughter. Accordingly, this matter must be reversed and remanded for a new trial. See *People v. Lockett*; *People v. Glass* (1981), 94 Ill. App. 3d 69, 418 N.E.2d 454; *People v. Smith* (1981), 94 Ill. App. 3d 969, 419 N.E.2d 404.

In light of our decision that this matter must be remanded for a new trial, we need not address the remaining two issues raised by defendant since they have become moot.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part and reversed and remanded in part.

Judgment affirmed in part; reversed and remanded in part.

McGLOON and O'CONNOR, JJ., concur.