THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRYL TOLIVER, Defendant-Appellant.

First District (1st Division)   No. 1—91—3008

Opinion filed April 19, 1993.

Rita A. Fry, Public Defender, of Chicago (John T. Kennedy, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Fabio Valentini, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendant Darryl Toliver was convicted by a jury of aggravated criminal sexual assault and armed robbery. Defendant was sentenced to consecutive extended terms of 60 years for each of the two offenses. Defendant appeals his conviction and sentences.

J.M. testified that she left work at 5:30 p.m. on Friday, November 3, 1989, and went to Ranalli's, where she drank iced tea and ate appetizers for three hours with her girl friends. Thereafter, J.M. went to Diana's in Greek Town to have dinner with her friends. At about 10:30 p.m., she went to a bar in Greek Town, Dugan's, where she consumed a total of three beers. At approximately 2 a.m., J.M. left Dugan's and entered a yellow car she believed was a cab and told the driver to go to 6101 North Sheridan. The driver turned around and she saw his face.

Defendant drove two blocks south on Halsted, turned right onto Van Buren and drove another two blocks, before stopping the car. Then, defendant jumped into the back seat and covered J.M.'s head with a towel. J.M. was forced out of the car and into the driver's side of a van. She further testified that defendant said he was going to kill her. Defendant forced J.M. to lie down with her head on his lap while he drove, holding a switchblade knife against her face.

J.M. testified that she thought the van was proceeding on the expressway because it was not stopping. Then, the van got off the expressway and made some stops and turns before coming to a complete stop. Defendant forced her through the bucket seats of the van into the back seat. Defendant unzipped his pants and ordered her to perform oral sex on him. J.M. claimed to be too drunk. Thereafter, defendant forced off one leg of her pantyhose and underpants. Defendant put his penis into J.M.'s vagina and had forced sex with her while repeatedly hitting her on the right side of the face with the butt of the knife.

After defendant sexually assaulted J.M., he forced her back into the front seat and demanded money from her. Defendant went through her purse. Then, defendant told her that he was "gonna take

[her] out by the airport and slice [her] up." Defendant also ordered J.M. to give him her jewelry. She replied "fuck you," opened the door and fell out the passenger side of the van. She ran towards the rear of the van to the first block, turned around, looked at the license plate and memorized the number. J.M. then ran to a house in the residential area, where she hid in the bushes. J.M. testified that defendant drove the van around the block four or five times before leaving the area. After 20 minutes of hiding in the bushes, she went into the middle of the street to stop a car. She asked the driver of the car to take her to a police station and help her remember the license plate number.

Upon arriving at the station, J.M. went to the front desk and wrote down the plate number. The police took her to a hospital, where photographs were taken of her wrist, foot and back, which showed scrapes from the attack. Also, a photograph of her inner thigh showing bruises was taken. Two days after the incident, a professional photographer took pictures of J.M.'s face with a black eye and bruises.

Next, Officer Joann Hammermeister testified that she was working the front desk of the police station when J.M. entered. Hammermeister testified that J.M. was "upset, she had marks, bruises, some blood on her face." She informed Hammermeister that she had been raped and robbed in a windowed livery van. Hammermeister wrote down the plate number J.M. gave her, 7167LY. She testified that J.M. described her assailant as a black male, approximately 6 feet tall, and 175 to 180 pounds. Although Hammermeister detected an odor of alcohol on J.M.'s breath, she testified that J.M. did not appear to be intoxicated, did not slur her speech or need assistance in walking. Hammermeister's report indicated that the offense occurred at 4:15 a.m.

Alvin McCune testified on behalf of the State that he worked the midnight shift on November 4, 1989, as the dispatcher for Plaza Limousine located at 1014 West Van Buren. McCune testified that only himself, defendant and James Thomas worked that morning. Thomas was assigned to drive a stretch limousine. At about 1 a.m., defendant requested use of a van to go get something to eat. Defendant left in a dark Ford Aerostar with the license plate 7167LY and did not return until approximately 5:30 a.m. Lastly, McCune testified that he did not have contact with defendant during the time that he was out.

Officer Butler, an evidence technician for the Chicago police department, testified that he photographed a stain located on the rear seat of a dark Ford Aerostar bearing the license plate number

7167LY. A sample of the stain was also taken. Butler further testified that the van had bucket seats.

Denise Troche, a criminalist for the Chicago police department, testified that the sample of the above stain revealed the presence of semen. Troche further testified that she examined a sexual assault kit of samples taken from J.M. These samples also revealed the presence of semen.

Mark Heimberger testified on behalf of the State that he was employed as a detailer by Plaza Limousine. He stated that on November 2 he detailed the van with the license plate 7167LY and did not notice any stains in the rear seat.

The State's last witness was Detective Mook who, pursuant to a check on the license plate number which J.M. had provided, went to Plaza Limousine. Mook saw the van. He, too, observed a dried stain on the rear seat. Mook arrested defendant at Plaza Limousine. On Sunday morning, November 5, Detectives Mook and Dorsch visited J.M. and displayed seven photographs. She identified defendant as the man who robbed and raped her. J.M. informed Mook that defendant had used a towel to cover her face. Mook went and reinspected the van and found a towel under the driver's bucket seat. That evening, J.M. viewed a lineup. Each subject in the lineup was told to say some lines. She picked defendant out of the lineup because she recognized his face and his voice.

The State introduced several exhibits into evidence, expressly excluding police reports. Upon the State resting its case, defendant moved for a directed verdict, which was denied.

The defense entered a stipulation that defendant stands 5 feet 8 inches tall. Thereafter, defendant rested.

The jury found defendant guilty of aggravated criminal sexual assault and armed robbery. Defendant's motion for new trial was denied.

At sentencing, the State presented evidence of a certified copy of a 1986 conviction for aggravated criminal sexual assault, armed robbery and armed violence for which defendant received a six-year prison sentence. The State also presented a certified copy of a 1983 conviction for robbery. In mitigation, defense counsel argued that defendant had been "gainfully employed." The circuit court sentenced defendant to two consecutive extended terms of 60 years' imprisonment. Defendant appeals his conviction and sentences.

First, defendant contends that the State improperly commented during rebuttal argument on his failure to testify, urged the jury to "try" defense counsel and not him, and abused the rape shield statute

to exhort the jury that the victim not get "raped" again. Defendant argues that the above errors deprived him of a fair trial.

The State is generally given wide latitude in its closing and rebuttal arguments. (*People v. Smith* (1990), 199 Ill. App. 3d 839, 557 N.E.2d 596.) The State's arguments, however, must be based on the evidence or be a reasonable inference drawn therefrom. (*Smith*, 199 Ill. App. 3d at 854, 557 N.E.2d at 607.) When reviewing allegations of prosecutorial misconduct, the complained-of statements must be considered in the context of the entire closing argument of both the State and the defendant. (*Smith*, 199 Ill. App. 3d at 854, 557 N.E.2d at 607-08.) Moreover, if the complained-of statements are within the rebuttal argument, the statements will not be held improper if they appear to have been provoked or invited by the defense counsel's argument. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390-91, 478 N.E.2d 291, 297.) Even if the statement is found to be improper, it will be considered prejudicial only where defendant can show that the jury would have reached a contrary verdict had the improper statements not been made. (*People v. Manley* (1991), 222 Ill. App. 3d 896, 584 N.E.2d 477.) Furthermore, if the complained-of statement was not objected to at trial or not raised in defendant's written post-trial motion, any error is waived unless the statements are so prejudicial as to deprive defendant of a fair trial or so flagrant as to threaten deterioration of the judicial process. *People v. Albanese* (1984), 104 Ill. 2d 504, 518, 473 N.E.2d 1246, 1251-53.

The defendant contends that the following State's rebuttal comment improperly referred to his failure to testify:

> "The defendant's attorney stands here and tells you that the [d]efendant asserted his innocence, well, we have the burden of proof, ladies and gentlemen. The [d]efendant is not obligated to present any evidence. He is not obligated to testify and you will be instructed that the fact that he did not testify cannot be held against him or used upon by you in any manner in reaching your determination of his guilt.
>
> That is not the same thing as stating that he did not do it."

The above comment was a response to defense counsel's closing argument, which stated:

> "You heard that Detective Mook spoke to [defendant]. As [co-defense counsel] told you during opening, [defendant] has asserted his innocence from the beginning."

The implication of defense counsel's argument is that defendant asserted his innocence to Mook. Although defendant asserted his innocence by pleading not guilty, a review of Mook's testimony failed to

reveal any inference that defendant affirmatively asserted his innocence directly to Mook.

In determining whether a defendant's right to remain silent has been violated, the test is whether the complained-of reference was calculated to direct the attention of the jury to defendant's failure to avail himself of his legal right to testify. (*People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) The complained-of statement is permissible when it is motivated by the purpose of demonstrating the absence of any evidentiary basis for defense counsel's argument, rather than for the purpose of calling attention to the fact that defendant did not testify. *People v. Cooper* (1985), 136 Ill. App. 3d 517, 483 N.E.2d 309.

■■ The State's complained-of comment, which was invited by defense counsel's implication during closing argument that defendant asserted his innocence to Mook, was made to clarify the fact that defendant did not assert his innocence to Mook. The State did not make the complained-of remark to draw attention to the fact that defendant did not testify. In fact, the State clearly and correctly informed the jury that defendant did not have to present any evidence or testify and the fact that he did not testify could not be used in any way in reaching the determination that defendant was guilty.

Defendant's next allegation of prosecutorial misconduct is that the State urged a guilty verdict based upon fear. Initially, the State argues that defendant has waived this issue by failing to include it in his post-trial motion. We disagree that it was waived because paragraph 13(f) of defendant's post-trial motion alleges that the State made prejudicial, inflammatory and erroneous statements during closing argument, including the comment "God forbid we become a victim of a sexual assault." Defense counsel objected to this statement during rebuttal argument and the circuit court sustained the objection. Therefore, defendant did not waive this argument because he made a contemporaneous trial objection and included the complained-of statement in his written post-trial motion.

■■ Defendant attempts to liken the State's above comment to that made in *People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 564 N.E.2d 850. In *Gutirrez*, the State argued "[h]ow many of you, ladies and gentlemen, getting into your automobile, put your hands in the pockets, making yourselves the victim of this man." (*Gutirrez*, 205 Ill. App. 3d at 249, 564 N.E.2d at 862.) Defendant also cited *People v. Frazier* (1982), 107 Ill. App. 3d 1096, 1101-02, 438 N.E.2d 623, 627, wherein the State argued to the jurors that their sisters, wives and daughters might be raped someday because they happened to be sitting next to someone like the defendant. The State's comment in this

case, however, is distinguishable from those comments in the cases cited by defendant. In the instant case, the State is not suggesting that defendant is going to make the jurors themselves or any of their family members his next victim. In fact, the complained-of statement refers to the victim's ability to identify defendant. The full context in which the complained-of statement was made is as follows:

"You know that she had an opportunity to observe him, ladies and gentlemen, because the degree of attention that she had was necessarily high. Many of us, God forbid that we should ever be the victim's [*sic*] of sexual assault—[objection sustained]—any person, God forbid that anyone should be the victim of such a vile, heinous attack—[objection overruled]—would almost necessarily, and you know this by common sense, would pay attention to the man who was attacking you."

The State's rebuttal argument was not intended to inflame the jury and it did not prejudice the jury against defendant. The State did not urge the jury to convict defendant out of fear. Additionally, defense counsel invited the State's comments by repeatedly implying that J.M.'s identification of defendant was suspect through comments like "[J.M.'s] memory, her opportunity and the reasonableness of her testimony, that's what you're here for." The State is permitted to respond that J.M.'s identification of defendant is reasonable because he was on top of her while sexually assaulting her. Furthermore, any error which may have occurred concerning these statements was cured by the circuit court sustaining objections and instructing the jury that "any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

■ Defendant further argues that the State committed prosecutorial misconduct because it "diverted [its] argument to an attack on defense counsel, distracting the jurors from the relevant issues." During rebuttal argument, the State commented that after J.M. had been robbed, raped, beaten, and searched for while she hid in the bushes, defense counsel wanted the jury to look down on her because in response to defendant's demand for her jewelry she said "fuck you." The State included this argument in rebuttal because defense counsel argued in closing, "[w]hat did [J.M.] tell [defendant] when he demanded [her] jewelry? Excuse my language. She said, 'F you.' She didn't say 'F.' " Defense counsel's argument that J.M. used profanity is irrelevant and was argued to suggest that the use of profanity should be weighed against J.M. The State did not want to lend credence to this suggestion by not responding to the argument during rebuttal. The rebuttal argument was invited by defendant. (*People v.*

*Jennings* (1986), 142 Ill. App. 3d 1014, 492 N.E.2d 600.) Again, the circuit court cured any error by instructing the jury to "consider only the evidence as it applies to the defendant."

■ Defendant's last contention, that the State's comments during rebuttal argument amounted to prosecutorial misconduct, focuses on the statement: "we try to do everything we can to make sure that [J.M.] doesn't get raped again." This argument was a response to defense counsel's closing wherein he argued that the sperm from J.M.'s vagina had not been tested to determine from whom it came. The State was explaining to the jury that it is improper to question a victim about prior sexual activity. The State's comment that the statute protects a victim from being "raped again" was objected to by defendant, and the court sustained the objection and instructed the jury to disregard that comment. The alleged error was cured and did not contribute to the jury's guilty verdict.

We find that the complained-of statements did not constitute prosecutorial misconduct. Accordingly, defendant is not entitled to a new trial on this basis.

Second, defendant contends that the circuit court improperly allowed the State to use police reports as substantive evidence. We agree with defendant that police reports are generally not admissible into evidence. (*People v. Morris* (1978), 65 Ill. App. 3d 155, 382 N.E.2d 383.) Police reports are not to be used to divulge substantive evidence, but may be used for impeachment or to refresh a witness' recollection. (*Morris*, 65 Ill. App. 3d 155, 382 N.E.2d 383; *People v. Williams* (1992), 240 Ill. App. 3d 505, 608 N.E.2d 510.) The reason such reports are inadmissible is because they are the product of secondhand knowledge and, hence, hearsay. (*People v. Garrett* (1991), 216 Ill. App. 3d 348, 576 N.E.2d 331.) Hearsay, however, in the form of prior consistent statements is admissible to rebut an inference that testimony is a recent fabrication. (*People v. Manley* (1982), 104 Ill. App. 3d 478, 432 N.E.2d 1103.) Thus, prior consistent statements are admissible to show that a declarant told the same story before the alleged recent fabrication. (*Manley*, 104 Ill. App. 3d 478, 432 N.E.2d 1103.) In the instant case, the circuit court overruled defendant's objection to the use of the police'report based on the recent fabrication exception to hearsay.

■ On cross-examination, defense counsel questioned J.M. about supplying information to a police officer while in the hospital. Specifically, defense counsel asked J.M., "do you recall telling [the detectives] that [the license plate number] was either 716744 or 716748?" J.M. responded that she had always remembered the license plate as

7167LY. The defense counsel implied that J.M. had not accurately recalled and/or identified the license plate number of the van in which the assault took place. This inference was unsupported by evidence. The additional implication of defense counsel's questioning was that J.M.'s testimony that she had informed the police that the plate number was 7167LY was a fabrication. To rebut these inferences, the State inquired of Mook what the license plate number was which was written in the police report. Mook read from the report the number 7167LY. The State never attempted to introduce the report, itself, into evidence. We find that the officer's use of the report was not improper.

Finally, defendant contends that the circuit court considered improper factors in aggravation during his sentencing. Defendant argues that the circuit court improperly used his employment history and his failure to visit or support his two children born out of wedlock as factors in aggravation. We disagree.

■ Defense counsel attempted to assert defendant's past and current employment as a factor in mitigation. The circuit court responded that after reviewing defendant's employment history, it was evident that "most of the time [defendant was] unemployed." Although defendant was employed at the time of his arrest for this crime, no court should be willing to accept his employment as a factor in mitigation since he used a tool of his employment, namely the livery van in which he raped and robbed his victim, to commit his crimes. The circuit court merely refused to consider defendant's employment history as a factor in mitigation. The record is devoid of any indication that the circuit court, instead, considered his employment history as an aggravating factor.

Defendant's claim that the circuit court improperly considered his failure to support his two children, a nonstatutory factor in aggravation, is meritless. A sentencing court is entitled to consider nonstatutory factors in aggravation when imposing an extended-term sentence. (*People v. Diaz* (1989), 189 Ill. App. 3d 473, 545 N.E.2d 399.) A sentencing court is allowed to consider defendant's history and character when imposing a sentence. (*People v. Robinson* (1991), 221 Ill. App. 3d 1045, 582 N.E.2d 1299.) Therefore, the circuit court properly considered defendant's lack of responsibility towards his children. Defendant argues that *People v. Smothers* (1979), 70 Ill. App. 3d 589, 388 N.E.2d 1114, supports his argument that a sentencing court cannot consider a defendant's failure to support and accept responsibility for his children as an aggravating factor. *Smothers*, however, held that the circuit court abused its discretion by considering the defend-

ant's choice to live with a woman to whom he was not married when sentencing him. (*Smothers*, 70 Ill. App. 3d at 591, 388 N.E.2d at 1115.) The defendant in *Smothers* did contribute to the support of his children. Therefore, defendant's citation of *Smothers* is unpersuasive.

For the foregoing reasons, we affirm the conviction and sentences of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.