151 F.3d 1035
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kelvin WILLIAMS, Petitioner-Appellant,
v.
Sergio MOLINA, Respondent-Appellee.
 No. 97-1828.
 United States Court of Appeals, Seventh Circuit.
 Argued July 7, 1998.
Decided July 17, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 96 C 2332 George M. Marovich, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JESSE E. ESCHBACH, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Kelvin Williams appeals the denial by the district court of his petition for a writ of habeas corpus. See 28 U.S.C. § 2254. In return for a sentence of fifteen years imprisonment, Williams agreed to plead guilty to home invasion, aggravated criminal sexual assault, and three counts of armed robbery. On appeal, he argues that his public defender rendered ineffective assistance. He claims that counsel forced him to accept the plea deal despite his innocence and that she failed to adequately investigate the basis for the charges. We affirm.
 
 I. FACTUAL BACKGROUND
 
 2
 During 1989, Kelvin Williams lived with a woman named Diane Dorbin; the two of them had a daughter named Adriana. Early in 1990, Williams went to prison for possession of a stolen vehicle. During his incarceration, Diane sold his belongings, then took Adriana and moved in with her mother, Pamela, who lived in a high-rise apartment.
 
 
 3
 The courts that have previously considered Williams' claims have relied on the following stipulated facts: on September 19, 1990, Williams and two other individuals, one of whom was armed with a sawed-off shotgun, forcibly entered Pamela's apartment. Eleven people, relatives and friends, were inside the dwelling when Williams and his confederates entered. After ordering everybody against a wall, Williams, who is a boxer, slapped Pamela in the face. He then woke up Diane, who had been sleeping on the couch, "and he punched her about the face and body, and he knocked her out, then he splashed a bucket of [mop] water on her; and then she woke up, and he knocked her out again." After he knocked Diane out for the second time, Williams bound her with a telephone cord. He then grabbed Janice, Diane's younger sister, tore open her blue jeans and sexually assaulted her, after which he tied her up. He struck and slapped each of the occupants in turn, and took money and food stamps from Diane and Pamela and items of jewelry from the others. The third, unarmed intruder picked up a baseball bat in the apartment and struck one of the occupants in the leg. After Williams and his accomplices fled, Diane was taken to the hospital, suffering from a broken nose, black eyes, and lacerations.
 
 
 4
 Following his arrest, Williams was charged with six counts of home invasion, five counts of aggravated criminal sexual assault, one count of criminal sexual assault, three counts of armed robbery, six counts of armed violence, two counts of aggravated battery, three counts of theft, and three counts of residential burglary. At the sentencing conference, the state indicated its intention to proceed on all counts and to seek a sentence of twenty-five years imprisonment. Williams' public defender then brokered a plea deal under which the defendant agreed to plead guilty to a single count of home invasion, a single count of aggravated criminal sexual assault, and three counts of armed robbery in return for a fifteen year sentence.
 
 
 5
 The judge examined photographs of Diane, taken by police, which showed her injuries. A photograph of an infant was also included in the evidentiary file, and the parties referred to a police incident report revealing that the defendant had struck the infant, though Williams was not charged for that conduct. After further reviewing the state's evidence, the judge declared his willingness to accept the plea deal if Williams were amenable to it.
 
 
 6
 Williams was then brought before the court. He stated that he had not been made any promises other than the sentence, nor had he been threatened or coerced into accepting the plea; instead, he was entering his guilty plea freely and voluntarily. The court next explained the nature of the charges and the sentence carried by each, and the defendant acknowledged each of the charges. After the court enumerated the rights given up by the defendant in entering the plea deal, Williams declared that he understood and signed a trial waiver agreement. When Williams informed the court that he was pleading guilty because he was guilty, the state summarized the factual basis of the plea, and Williams' attorney stipulated to the summary. Finally, the court asked Williams whether he was "satisfied with your legal representation up to this point." Williams admitted that he was satisfied. The court found the stipulated facts a sufficient basis for the charges, accepted the defendant's guilty plea, and imposed the fifteen-year sentence.
 
 
 7
 Williams exhausted his state-court remedies, then filed a petition for a writ of habeas corpus in the district court, which was denied. He now appeals, claiming his court-appointed attorney rendered constitutionally ineffective assistance. He asserts that because his attorney refused to investigate his case, she failed to discover that Diane expressly invited him over to her mother's apartment on the night of September 19, 1990, and that Pamela let him into the apartment, though he concedes that he struck Diane following an argument. He further denies sexually assaulting Janice or taking anything from the apartment or its occupants. Williams concludes that, absent his public defender's constitutionally inadequate performance, it would have been obvious that he is innocent and that the crimes for which he was jailed "could not have been committed."
 
 II. STANDARD OF REVIEW
 
 8
 Williams' section 2254 petition was filed in the district court on April 21, 1996, prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (eff.Apr. 24, 1996), and therefore pre-AEDPA standards of review apply. See Lindh v. Murphy, 521 U.S. 320, ----, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). Whether counsel's performance is constitutionally ineffective is a mixed question of law and fact and is examined de novo. See Cuyler v. Sullivan, 446 U.S. 335, 341-42, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). State court findings of historical fact, however, are presumed correct and are reviewed deferentially. See Johnson v. Trigg, 28 F.3d 639, 643-44 (7th Cir.1994); see also 28 U.S.C. § 2254(d) (1994); Sumner v. Mata, 449 U.S. 539, 545-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). A state appellate court's findings of fact are entitled to the same presumption of correctness as those made by a state trial court. See id. at 546-47.
 
 III. ANALYSIS
 
 9
 Counsel is presumed effective. To prevail on a claim of ineffective assistance, it is the petitioner's burden to show both that counsel's performance "fell below an objective standard of reasonableness," and that her errors were sufficient to deprive the defendant of a fair proceeding. Strickland v. Washington, 466 U.S. 668, 687-90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because the test is conjunctively phrased--a petitioner's failure to satisfy either prong forecloses his challenge--a reviewing court need not determine whether counsel's performance was constitutionally deficient if a petitioner cannot establish prejudice therefrom. See id. at 687, 697. The benchmark in ineffective assistance claims is whether counsel's shortcomings "so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied upon as having produced a just result." Id. at 686; see also Lockhart v. Fretwell, 506 U.S. 364, 368-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (errors should not grant the defendant "a windfall to which the law does not entitle him"). The Strickland analysis also applies to petitioners who challenge their plea deals: to establish prejudice, the defendant must demonstrate a reasonable probability that but for counsel's errors, he would have insisted on going to trial rather than accepting the deal. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
 
 
 10
 Williams has failed to demonstrate either that he was coerced into accepting his plea deal or that the charges against him lacked a basis in fact. Nothing in the record before this court suggests that the plea was not "an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences.' " McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)); see also Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Williams' unsubstantiated assertion that he was pressured into accepting the deal is insufficient to call into question the integrity of his guilty plea.
 
 
 11
 Williams counters that his attorney refused to investigate his case: faced with the choice between a fifteen-year sentence or proceeding to trial with no meaningful defense and risking substantially longer imprisonment, Williams had no real alternative, despite his innocence, but to accept the deal. He contends that had his attorney conducted a full investigation, his innocence would have been obvious. Where, as here, counsel's purported error is a failure to investigate or discover potentially exculpatory information, a habeas petitioner must demonstrate that the missing evidence "likely would have changed the outcome of a trial." Hill, 474 U.S. at 59-60; see also Strickland, 466 U.S. at 690-92. A petitioner must "identify the names of any witnesses who should have been called to testify, and ... detail specifically what any investigations may have produced." United States v. Zillges, 978 F.3d 369, 373 (7th Cir.1992). Williams must therefore point to specific, probative, admissible evidence that would have been discovered had a proper investigation occurred, evidence likely to have undermined the state's case. See, e.g., Wright v. Gramley, 125 F.3d 1038, 1044 (7th Cir.1997); United States v. Weaver, 882 F.2d 1128, 1138-40 (7th Cir.1989).
 
 
 12
 In support of his claim of ineffective assistance, Williams offers three bits of evidence, the first of which is a trial transcript in which his cousin, LeRoy Burke, was acquitted of being the bat-wielding third intruder. Williams' reliance on the transcript is misplaced. The judge who acquitted LeRoy Burke declared that the "only issue" at trial was whether Burke was one of Williams' accomplices on the night of the crime. "I don't have to decide whether these women were beaten, or assaulted, or sexually molested, or tied up, or hit with a bat, or anything of that nature. All I have to do is decide whether this is one of the three people who was in there at the time." Thus, Williams' contention that the Burke court "determined that there was no such crime" is simply incorrect. While Williams urges that the transcript highlights Diane's lack of credibility and thus the flimsiness of the state's case against him, Williams is mistaken both as to the weight and the import that should be afforded that determination. The Burke court's credibility findings pertained to the question of whether Burke was the third intruder, not whether the charged crimes had taken place or whether Williams was one of the offenders.
 
 
 13
 Neither does the Burke trial transcript lend support to Williams' claim that a vigorous pre-trial investigation by his own attorney would have revealed the absence of evidentiary support for the state's case. To the contrary, a review of the Burke transcript reveals: a roomful of victims willing and able to identify Williams as the perpetrator; numerous police officers available to testify about the events in question and their investigation of the crimes; multiple police reports, produced by different officers independently interviewing different victims, whose statements to police corroborate one another; and photographs of Janice's torn clothes, Pamela's apartment, and Diane's badly beaten face. See, e .g., People v. Peeples, 155 Ill.2d 422, 186 Ill.Dec. 341, 616 N.E.2d 294, 318 (Ill.1993); People v. Toliver, 246 Ill.App.3d 842, 189 Ill.Dec. 210, 619 N.E.2d 1259, 1264-65 (Ill.App.Ct.1992). Moreover, the transcript of Williams' plea conference and sentencing hearing reveals that the assistant state's attorney, Williams' attorney, and the sentencing judge referred to the police reports and the photographs; such evidence was thus available to Williams' public defender when she counseled her client to plead guilty to reduced charges. Whether or not Williams' attorney failed to adequately investigate her client's case (and current counsel have failed to secure an affidavit from Williams' public defender regarding the extent of her pre-trial investigation), nothing in the Burke trial transcript suggests that the state's charges lacked an evidentiary basis or that Williams was prejudiced by his attorney's conduct. The Burke trial transcript thus does nothing to undermine confidence in the outcome of Williams' plea deal. See Hill, 474 U.S. at 59-60.
 
 
 14
 Williams next points to Diane's affidavit as proof of his innocence. In her affidavit, she now avers that Williams was invited to the apartment on September 19, 1990, that he arrived alone, unarmed, and did not rob or sexually assault anyone in the apartment, though she concedes that they argued and fought. Williams suggests that had his attorney interviewed Diane prior to trial, Diane likely would have admitted the untruth of her statements to police following the crime. Williams' contention is pure speculation, insufficient to sustain his claim that counsel rendered ineffective assistance. See Wright, 125 F.3d at 1044; Weaver, 882 F.2d at 1138-39. Burke went to trial eighteen months after Williams was sentenced, and Diane's testimony under oath at Burke's trial was consistent with her prior statements to police. She did not renounce those statements until August 27, 1994, forty-seven months after the attack, and nothing in the record suggests that she would have been inclined to do so in 1991. Furthermore, the only recanting victim is Diane, the mother of Williams' daughter, and thus the witness whose present denials would be the most suspect. Cf. United States v. Kamel, 965 F.2d 484, 494-95 (7th Cir.1992) (recanting witnesses are generally regarded with extreme suspicion, their recantations afforded little weight). There has been no suggestion that investigating officers or the other victims, including Janice and Pamela, have denied that the charged events took place. Counsel's insistence at argument that reports of the attack have been "recanted by everyone that has a story to tell" is thus baffling. When viewed against her statements to police on the night of the crime, her statements under oath at the Burke trial, and the statements of the other victims, it simply cannot be said that Diane's present recantation is evidence "likely [to] have changed the outcome of a trial." Hill, 474 U.S. at 59-60; see also 725 ILCS 5/115-10.1 (West 1998); People v. Rivera, 166 Ill.2d 279, 209 Ill.Dec. 767, 652 N.E.2d 307, 312 (Ill.1995); People v. Fauber, 266 Ill.App.3d 381, 203 Ill.Dec. 769, 640 N.E.2d 689, 695 (Ill.App.Ct.1994).
 
 
 15
 Finally, Williams points to his attorney's failure to photograph Pamela's apartment as proof of counsel's ineffectiveness. He contends that "photographs of the apartment building's exterior, as well as its security system, would prove that the charge of residential burglary was implausible." His argument is meritless. The three counts of residential burglary were dropped pursuant to the plea deal negotiated by Williams' attorney. Photographs of the security system and the building's exterior would therefore have contributed nothing to Williams' defense. To the extent that Williams' court-appointed attorney failed to photograph the building, there is nothing in the record that suggests either that the decision was professionally unreasonable or that Williams was prejudiced thereby.
 
 
 16
 Though the defendant briefly suggests that his case should be remanded for an evidentiary hearing, he has failed to allege facts that would entitle him to relief, and has likewise failed to demonstrate that he did not receive a full and fair hearing in a state court concerning these matters. See Spreitzer v. Peters, 114 F.3d 1435, 1456 (7th Cir.1997).
 
 
 17
 The decision of the district court is therefore AFFIRMED.